Jay ROMASKO, et al., Plaintiffs,

v.

CITY OF MILWAUKEE and David Morgan, a minor, et al., Defendants.

Paul E. FELDNER, Guardian ad litem for David Morgan, a minor, Petitioner-Appellant-Petitioner,

v.

COUNTY OF MILWAUKEE, Respondent.

Supreme Court

*No. 81–230. Argued April 27, 1982.—Decided July 2, 1982.*

(Also reported in 321 N.W.2d 123.)

For the appellant-petitioner there was a brief (in this court) by *Thomas R. Jones* and *Jones & Feldner* of Milwaukee, and oral argument by *Thomas R. Jones.*

For the respondent the cause was argued by *Robert G. Ott,* principal assistant corporation counsel, with whom on the brief (in court of appeals) was *Robert G. Polasek,* corporation counsel.

HEFFERNAN, J.  This is a review of an unpublished court of appeals' decision dated October 23, 1981, which affirmed the order of the circuit court for Milwaukee county, ROBERT J. MIECH, Circuit Judge, which denied Attorney Paul E. Feldner's petition for the payment of fees by Milwaukee county for his services rendered to the court as an appointed guardian *ad litem* for the indigent minor, David T. Morgan, in a personal injury action

The facts of the underlying action are not included in the record on this review.  The underlying action, however, as revealed by the docket entries, which are in the record, shows that a personal injury action was commenced by Jay Romasko and others against the city of Milwaukee, the Golden Rule Bus Line, and an insurer in September of 1977.  One of the defendants was David T. Morgan, a minor born January 23, 1970.

On November 20, 1978, the trial court granted the plaintiff's motion for the appointment of a guardian *ad litem* for the minor defendants.  Originally, Attorney Kenneth Guy was appointed to represent David Morgan. However, the docket entries indicate that, on April 7, 1980, Attorney Paul E. Feldner, the petitioner in this case, was appointed, apparently in substitution, as guardian *ad litem*.  Feldner was appointed by the circuit court pursuant to secs. 803.01(3)(a) and 757.48(1), Stats.[1]

---

[1] "803.01  **Parties plaintiff and defendant;**

"(3) INFANTS OR INCOMPETENT PERSONS.  (a) *Appearance by guardian or guardian ad litem.* If a party to an action or proceed-

The case went to trial before a jury in April of 1980. At the close of a three-week trial but prior to oral argument, Morgan was dismissed without prejudice and without costs. A verdict in excess of $40,000 was returned against other defendants. Subsequently, the guardian *ad litem* petitioned the trial court to order Milwaukee county to pay his fees as guardian *ad litem*. He itemized his services and asked that he be compensated in accordance with a fee schedule established by the rules of the Wisconsin Supreme Court as set forth in SCR 81.01 and SCR 81.02.[2]

ing is a minor, or if the court has reason to believe that a party is mentally incompetent to have charge of the party's affairs, the party shall appear by an attorney, by the general guardian of the party's property who may appear by attorney or by a guardian ad litem who may appear by an attorney. A guardian ad litem shall be appointed in all cases where the minor or incompetent has no general guardian of property, or where the general guardian fails to appear and act on behalf of the ward or incompetent, or where the interest of the minor or incompetent is adverse to that of the general guardian. Except as provided in s. 807.10, if the general guardian does appear and act and the interests of the general guardian are not adverse to the minor or incompetent, a guardian ad litem shall not be appointed. Except as provided in s. 879.23 (4), where the interests of the minor or mentally incompetent person are represented by an attorney of record the court shall, except upon good cause stated in the record, appoint that attorney as the guardian ad litem."

"757.48 **Guardian ad litem must be an attorney.** (1) Except as provided in s. 879.23(4), in all matters in which a guardian ad litem is appointed by the court, the guardian ad litem shall be an attorney admitted to practice in this state and shall be allowed reasonable compensation for the services, reasonable compensation to be such as is customarily charged by attorneys in this state for comparable services. If the attorney of record is also the guardian ad litem, the attorney shall be entitled only to attorney fees and shall receive no compensation for services as guardian ad litem."

[2] "SCR 81.01 **Compensation of attorneys appointed by court**

"Notwithstanding any provision of the statutes, in all cases where the statutes fix a fee and provide for the payment of ex-

On January 29, 1981, after a hearing in which Milwaukee county appeared by its attorney, the circuit court denied the allowance of fees. The court stated that, pursuant to sec. 803.01(3), Stats., it was required to appoint a guardian *ad litem* and, furthermore, that sec. 757.48 (1) provided that a guardian *ad litem* be allowed reasonable compensation for his services. In his oral decision from the bench, the circuit judge refused to order Milwaukee county to pay the fee. The judge stated that the services had been competently performed pursuant to the court order, and said that he had no doubt that Feldner should be paid. He was, however, unable to find any statute which gave:

". . . indication as to who shall pay for the services rendered.
". . . in good conscience I feel that you are entitled to consideration for the services that you rendered on behalf of your ward, but I just can't in good conscience find any specific section of the statute that I could rely on, and the closest you have is that operating costs section on

penses of an attorney to be appointed by the court to perform certain designated duties, the court appointing the attorney, after the services of the attorney have been performed and the disbursements incurred, shall fix the amount of his or her compensation for the services and provide for the repayment of disbursements in such sum as the supreme court has specified in SCR 81.02."
"SCR 81.02  **Compensation**
"(1) Attorneys appointed by any court to provide legal services for that court, for judges sued in their official capacity, for indigents and for boards, commissions and committees appointed by the supreme court shall be compensated at the following rates:
"(a)  Court time, $50 per hour.
"(b)  Office time, $35 per hour.
"(c)  Travel time outside the county in which the attorney's principal office is located, $25 per hour.
"(2) The rates specified in sub. (1) apply only to services performed after May 19, 1978, for appointments by the supreme court and to services performed after the effective date of this rule for appointments by any other court of record."

753.19, but I have to agree with [counsel for Milwaukee county] that I feel it relates to the operative functions of the court insofar as ordering supplies and materials and books and air conditioners or whatever. There is no doubt that you put in the time for those three weeks that we were engaged in litigation, and there is no doubt that you should be compensated, but the big question is—by whom?"

An order was entered on January 29, 1981, denying Feldner's request that Milwaukee county pay him for services as a guardian *ad litem*. Appeal from that order was taken to the court of appeals on February 2, 1981. The initial response of Milwaukee county was to move to dismiss for lack of subject matter jurisdiction. This motion was denied, and it has not been renewed in this court.

The court of appeals affirmed the circuit court order in an unpublished per curiam decision. The court of appeals acknowledged the finding of the circuit court that the appointment of a guardian *ad litem* was mandated and necessary, but held that the legislature had not designated the manner of payment of the fees. The court of appeals concluded that Feldner's reliance on SCR 81.01 was misplaced, because that rule is operative only where a fee is fixed by statute. It was unable to find such statute.

The court of appeals also disposed of Feldner's reliance on sec. 753.19, Stats., because, it concluded, that section details only the manner of providing the courts of Milwaukee with equipment and personnel for the operation of the courts. It held that neither the court rule nor the statute authorized the court to order Milwaukee county to pay the guardian *ad litem's* fees. This void in the statute, it held, would have to be corrected by the legislature and not by the courts.

We conclude on this review that, under the applicable statute, where a guardian *ad litem* is appointed by a

court to represent an indigent minor and no specifically applicable provision for payment of fees appears in the statute, the county of venue must pay those fees. Accordingly, we reverse and remand to the circuit court to enter an order directing Milwaukee county to pay Attorney Feldner the guardian *ad litem* fees as found to be reasonable by the circuit court.

In reaching this conclusion we start with the general policy consideration that minors are the special objects of the solicitude of the courts and of government generally. This policy is reflected in the legislative enactment, sec. 803.01 (3) (a), Stats., which specifically imposes the obligation on the court to appoint a guardian *ad litem* in any action or proceeding involving a minor where no general guardian appears. The necessity for a guardian *ad litem* in the underlying action is not questioned. Sec. 803.01 (3) (c) provides that a proceeding or action brought against a minor not represented by a guardian or guardian *ad litem* is voidable upon motion. Under the statutory scheme devised by the legislature, the appointment of a guardian *ad litem* is necessary for the validity of a court's order and is required to assure the integrity of its processes. The purpose in appointing a guardian *ad litem* then is not limited to the services that may be rendered to the ward. The guardian *ad litem's* service is rendered to the system of justice and, more specifically, to the particular court and the county in which an action is venued. The public purpose mandating the appointment of a guardian *ad litem* is shown by the statement appearing in *Richardson v. Tyson,* 110 Wis. 572, 578, 86 N.W. 250 (1901) :

"As most fundamental among these [underlying principles it] must be borne in mind that the infant is always the ward of every court wherein his rights or property are brought in jeopardy, and is entitled to most jealous care that no injustice be done him. The guardian *ad litem* is appointed merely to aid and enable the court to perform that duty of protection."

*See* generally, Hohmann and Dwyer, *Guardians ad Litem in Wisconsin,* 48 Marquette Law Rev. 445 (1965).

Thus, the guardian *ad litem's* overarching duty is to assist the court in its governmental function of seeing to it that justice is done to those who are defenseless and who are the objects of the special concern of government.

Sec. 757.48(1), Stats., recognizes that these services must be compensated; and this court in the exercise of its constitutional superintending powers has, by SCR 81.02, also directed that "[a]ttorneys appointed by any court to provide legal services for that court, . . . for indigents . . . shall be compensated . . . ."

Compensation is mandated. This is in accordance with the long-standing philosophy of this court. As long ago as 1859, more than one hundred years before *Gideon v. Wainwright,* 372 U.S. 335 (1963), this court in *Carpenter v. County of Dane,* 9 Wis. 249, *274 (1859), directed that an indigent accused of a crime was entitled to have counsel provided at the expense of the county in which the prosecution was held. The facts of that case show that Carpenter, who had represented an indigent criminal defendant, presented a bill for services to the county board of supervisors and that bill was disallowed. After disposing of the question of the constitutional requirement for representation, this court on appeal turned its attention to the question of whether the legal services should have been gratuitously rendered. This court said:

"Is it said that the court should, under such circumstances, assign the accused counsel, who must perform services gratuitously? But why should an attorney be required to devote his time, attention and all the energies of his nature, to the defense of a criminal, for nothing? It may be that he is interested in seeing justice done, but really not more so than every other citizen. It is the boast of the profession that its members have ever been ready to volunteer their services in behalf of the unfortunate, despised, degraded criminal, so that he should have a fair

trial. But is it just to impose upon them the burden of laborious and gratuitous services, or the alternative of witnessing all principles of law and justice outraged in the conviction of an undefended prisoner? It seems eminently proper and just that the county, even in the absence of all statutory provision imposing the obligation, should pay an attorney for defending a destitute criminal." At 252.

Subsequently, as a reaction to the *Carpenter* case, the legislature enacted ch. 35 of the Laws of 1860. That enactment provided in part:

"[T]he county in which such action or proceedings arose shall not be held liable to pay the attorney or counsellor for services in making such defense."

Dane county, acting under the aegis of the new law, again refused to pay for the services of Attorney Smith in representing the indigent criminal defendant. This disallowance of attorney's fees came to this court in *County of Dane v. Smith*, 13 Wis. 654, *585 (1861). The court, in even stronger language than that used in *Carpenter*, emphasized the necessity of paying lawyers for services rendered upon order of the court. After pointing out that the legislature had by its legislation specifically recognized the necessity of court appointment of counsel, the court said:

". . . but that the attorney or counsellor, who, in obedience to [a court order], makes the defense, must, as a penalty for complying with the lawful command of the court, do so without compensation. Can the legislature do this? Can they command the time and services of the citizen, not officially but professionally, not in a matter which concerns the taxing power, the general enforcement of the laws, or the public defenses, but in one which relates exclusively to his private trade or calling, and then say that he shall receive no pay for them? We are of opinion that they cannot. We think that there is a limit to legislative authority in these particulars, and

that that limit will be found in the legitimate accomplishment of some one of the general purposes above indicated. We do not believe that the legislature have the power generally to say to the physician, the surgeon, the lawyer, the farmer, or any one else, that he shall render this or that service, or perform this or that act in the line of his profession or business without remuneration. If they could do so in one instance, they could command his whole time and services in the same manner, a stretch of power for which, we believe, no one will contend.

"Nor do we think that the legislature can leave with the courts the authority to order and employ, and at the same time destroy the implied promise to pay. The latter arises immediately out of the former, and is, in the law, so inseparably connected with it, that where the former exists the latter exists also. Unless the services are rendered gratuitously, which, under such circumstances, cannot be presumed, the promise of payment follows as of course." At 658–59.

While the obligation to appoint counsel in a criminal action stems from a constitutional right, the statutory promise to pay for services rendered to a court is no less binding. The situation presented in the instant case is analogous to the circumstances in *Carpenter* and *Smith,* and the principle that springs from each of them is that, where the law, either constitutional or legislative, requires the appointment of counsel, there is an implicit promise that compensation be paid. The service is not gratuitous. It is a matter of long-standing precedent in this state that indigent minors, who are the special concern of the state, should be furnished counsel who are able to serve them in the same manner that the more fortunate or affluent are served and that such counsel be reasonably compensated.

In the case before us, the obligation is even clearer than that in the *Dane County* cases. The appointment of a guardian *ad litem* is mandated by sec. 803.01(3)(a), Stats., and sec. 757.48(1) expressly provides that reason-

able fees be paid. Moreover, SCR 81.02 requires that attorneys appointed by any court to provide services for the court or for indigents "shall be compensated." Contrary to the holding of the court of appeals, we conclude that SCR 81.01 is relevant to Feldner's demand for the payment of his fees. That rule provides that:

"Notwithstanding any provision of the statutes, in all cases where the statutes fix a fee . . . the court appointing the attorney . . . shall fix the amount of his or her compensation. . . ."

The court of appeals held this provision inapplicable, because the statutes do not fix a fee. We disagree with the conclusion of inapplicability, because sec. 757.48(1), Stats., specifically fixes the fee of a guardian *ad litem* at "reasonable compensation for the services." We do not so narrowly construe fixing a fee as to mean that the fee is to be fixed in any particular statute or in a particular monetary amount. If that were true, the rule would be meaningless, for no statute which has been brought to our attention fixes an attorney's fee in a stipulated amount. Moreover, SCR 81.01 supersedes any fixed fee statutes in respect to amount and makes applicable the compensation schedule in SCR 81.02. These two rules read together demonstrate that, where the statutes require that a fee shall be paid, as does sec. 757.-48(1), the fee shall be computed in accordance with the schedule of SCR 81.02. That is the argument of the petitioner in the instant case.

Although the court of appeals acknowledged and accepted the reasons why Attorney Feldner should be paid for his services, it concluded, in agreement with the trial court, that there was "no statutory authority upon which it could base an order requiring the county to pay for the attorney's fees of the minor defendant . . . ." We conclude, however, in disagreement with both the circuit

court and the court of appeals, that sec. 753.19, Stats., requires the county to pay for these legal services rendered to the court. That statute provides:

"753.19 Operating costs; circuit court. The cost of operation of the circuit court for *each county,* except for the salaries of judges and court reporters provided to be paid by the state, and except for the cost assumed by the state under this chapter and chs. 40, 41 and 230, and except as otherwise provided, shall be paid by the county." (Emphasis supplied.)

We conclude, consistent with the discussion above, that the services of a guardian *ad litem* are services to the court. As pointed out earlier in our discussion, "The guardian *ad litem* is appointed merely to aid and enable the court to perform [its] duty of protection." *Richardson v. Tyson, supra* at 578. We have also noted that the failure to appoint a guardian *ad litem* where such an appointment is required by statute or by the circumstances may result in a voidable order or judgment. Hence, the appointment of a guardian *ad litem* is the *sine qua non* for the assurance of the validity of the procedures and the integrity of circuit court operations. A guardian *ad litem* fee is a necessary cost of the operation of the court; and, accordingly, where payment is not mandated by other specific provisions of the statutes, sec. 753.19, Stats., imposes that duty upon the county. Neither the circuit court nor the court of appeals reached the conclusion that sec. 753.19 was insufficient to impose that duty of payment upon a county in which the circuit court was venued, but they held it inapplicable to the county of Milwaukee, because they interpreted subsecs. 753.016(2) and (4) to be limitations upon the obligation of Milwaukee county. Sec. 753.016, in pertinent part, provides:

"753.016 **Second circuit.** (1) This section applies only in the judicial circuit for Milwaukee county.

"(2) COURT ROOM; OFFICES. (a) The county board shall provide suitable court rooms and offices, the sheriff shall provide the necessary deputy sheriffs as attending officers under s. 59.23(3) and the clerk of the circuit court shall provide a sufficient number of deputy clerks for all the judges and branches of the court.

". . .

"(4) EQUIPMENT. The board of supervisors of said county shall furnish said courts and said department of family conciliation, the judges, officers and employes thereof with suitable accommodations, adequately centralized and consolidated, and with the necessary furniture and supplies and make provision for its necessary expenses and operation."

Those portions of sec. 753.016, Stats., impose additional duties upon Milwaukee county, but there is nothing to demonstrate that the legislature intended Milwaukee county to be exonerated from the general requirements and obligations imposed by sec. 753.19. That statute applies to "each county." Milwaukee county is not excepted. Had it been the intention of the legislature to create such an exception, it would have been a simple matter to do so. The obligation of each county, including Milwaukee county, is to pay for court operations "except for the salaries of judges and court reporters," and certain other specified costs which are explicitly assumed by the state.

James Willard Hurst, *Dealing with Statutes,* p. 60 (1982), discusses the meaning of a statute which excepts certain specified matters from its scope. Professor Hurst indicates that an exception puts into sharper relief the contours of the principal policy of the statute. Here, of course, the general policy of the statute is that all costs of operation of circuit courts throughout the state shall be paid for by the county in which they are situate. The exception to the general policy is a narrow one. It applies only to those costs of operation which are expressly stated in the exception clause—salaries of judges and

court reporters or other costs expressly assumed by the state.

In construing an analogous exception provision in a federal statute, Professor Hurst states:

"If, but for the exception, the statute would there apply, Congress must intend its basic text to have an extremely broad reach." At 60–61.

The exception clause of sec. 753.19, Stats., makes pellucid the legislature's intent that personnel costs for court operations other than those excepted are obligations of the county. The fees of a guardian *ad litem* are personnel costs necessary for court operations without which a court cannot operate in the delivery of justice in situations where the legislature has mandated the appointment of a guardian *ad litem*. The fact that Milwaukee county has imposed upon it additional responsibilities by sec. 753.016 does not exonerate it from the obligation to pay the other costs of operation mandated by sec. 753.19.

It should also be noted that ch. 753, Stats. (Circuit Courts), applies to all circuit courts of the state unless there is a specific exception. Where particular counties are excepted from the operations of the chapter, the exception is specifically stated. No counties are excepted from the obligations imposed by sec. 753.19.

This reading of the statutes results in a conclusion which is plain and unmistakable and reflects the express legislative intent. That conclusion is consistent with the recommendations of the report submitted to the Wisconsin Judicial Council. That report was summarized and discussed by Hohmann and Dwyer in *Guardians ad Litem in Wisconsin, supra.* In the Hohmann-Dwyer article, the authors state, after pointing out that uncompensated service is inappropriate where the appointment is required by law:

"[I]t is recommended that the county in which the proceeding is brought have the duty to reimburse a

guardian *ad litem* for his expenses (at the very least) *and* to pay his fee (preferably), *if* no other party or fund be liable therefor under other provisions of the law." At 474.

We conclude, therefore, in accordance with the general public policy of the state of Wisconsin, that a guardian *ad litem* whose appointment is mandated by law must be compensated at a rate and in an amount found to be reasonable. Unless some other portion of the statutes explicitly imposes that duty upon other persons or other governmental units, the obligation under sec. 753.19, Stats., to make that payment is upon the county in which the proceedings are brought. Because both the circuit court and the court of appeals have failed to impose the obligation of payment upon Milwaukee county, we reverse the decision of the court of appeals and remand the cause to the circuit court for the entry of an order directing the county to pay reasonable compensation for the services. Because the circuit court found no obligation upon the county to pay, we are not certain from the record that it had reason to carefully consider and determine whether the time charges were appropriate for the services rendered to the court. Under the superintending and constitutional power of this court, however, the legal services shall be compensated in accordance with the rate set forth in SCR 81.02.

*By the Court.*—Decision reversed and cause remanded to the circuit court for further proceedings.

STEINMETZ, J. (*concurring*). The majority opinion recognizes that attorneys who are appointed pursuant to and as required by sec. 803.01(3)(a), Stats., are to be given reasonable compensation pursuant to sec. 757.48 (1). I agree that the appointed attorneys must be compensated, but the issue is by whom or by what governmental unit.

I would first look to the litigants responsible for involving the minor in the civil action. In the case which gave rise to this action for fees, the trial judge had the inherent power to order the plaintiff, who obtained a $40,000 judgment, tu pay the reasonable attorney fees of the guardian *ad litem*—attorney, whose services were required for the minor defendant he sued. In this case the minor defendant was dismissed so that the plaintiff had caused the fees to be incurred without legal justification.

The quotation used by the majority from Hohmann and Dwyer in *Guardians ad Litem in Wisconsin,* 48 Marq. L. Rev. 445 (1965), is consistent with this approach. That article stated after pointing out that uncompensated service is inappropriate where the appointment is required by law as follows:

"[I]t is recommended that the county in which the proceeding is brought have the duty to reimburse a guardian *ad litem* for his expenses (at the very least) *and* to pay his fee (preferably), *if* no other party or fund be liable therefor under other provisions of the law." *Id.* at 474, *supra* at 44.

I do not agree with the majority's interpretation that sec. 753.19, Stats., "Operating costs; circuit court" can be interpreted to include reasonable attorney fees.

The cost of operation to be borne by counties under sec. 753.19, Stats., was a compromise in establishing a unified state court system, whereby the state would pay judges' and court reporters' salaries and counties would pay all other costs of operation. It was not meant to include attorney fees occurring and made necessary by state law. If the state wishes, as it should, to protect the interests of minors by statute as it does in sec. 803.01(3), then the state should provide the funds for compensating those mandated services. Protection of minors in legal proceedings is a state interest, as well as local, which is

evidenced by the existence of sec. 803.01(3). If action is brought against a minor contrary to the requirement of appointment of an attorney—guardian *ad litem*, that action is voidable upon motion. Sec. 803.01(3)(c).

In Wisconsin since court reorganization became effective, there is a state court system and local county courts have been eliminated. Even though the cases cited by the majority placed attorney fee responsibility on local communities, since those services were considered rendered to local court operation, that is no longer a realistic approach. These services are presently rendered to the state court system and to hold otherwise is a parochial and improper attitude.

Since the state has mandated an appointment requirement, the state should also provide funds for reasonable compensation. The state has recognized its responsibility to the state court system for criminal prosecutions by establishing the public defender office. It should also recognize its responsibility to the state court system and provide for payment of lawfully *required services* of attorneys in civil litigation.

I concur with the majority decision, since a balancing is required between paying for the reasonable attorney services rendered on court order pursuant to statute and who is to pay. Sec. 48.235, Stats.,[1] does require the county in which the proceeding is held to pay reasonable compensation to the guardian *ad litem*, and I would consider that direct statement under the Children's Code as indi-

---

[1] "48.235  **Guardian ad litem.**  A guardian ad litem appointed under this chapter shall be appointed under s. 879.23. On order of the court, the guardian ad litem shall be allowed reasonable compensation to be paid by the county in which the proceeding is held. The guardian ad litem has none of the rights of a general guardian. No person who is an interested party in a proceeding, appears as counsel in a proceeding on behalf of any party, or is a relative or representative of an interested party, may be appointed guardian ad litem in that proceeding."

cative of the intent of the legislature for compensating guardian *ad litem* appointees when representing the interests of minors in court. *See also* sec. 767.045 Actions affecting the family.

Typically, the ward who is a defendant in civil litigation has no funds, obtains no recovery and is unable to pay the attorney fee. Since the appointed attorney must be reasonably compensated, custom would dictate the county be held responsible. However, I believe custom has been changed due to court reorganization and the state should, through the legislature, direct its attention to the needs in state funding for these mandated services provided to the state court system.

I would hold Milwaukee county liable for the fee based only on custom and those sections of the statutes involving divorce and Juvenile Code where the legislature has expressed its intent that minors in need of guardian *ad litem* services should have them provided at county expense. Custom, however, is no longer a persuasive reason for so holding, since the unified court system is in effect and the funding sources for these services should be re-examined with ultimate responsibility now to be borne by the state.