IN the MATTER OF the FINDING OF
CONTEMPT RELATIVE TO ATTORNEY'S
FEES IN STATE of Wisconsin v. William
LEHMAN:
DOUGLAS COUNTY, Appellant,

v.

Robert EDWARDS, Respondent.

Supreme Court

*No. 85–1082. Argued February 9, 1987.—Decided April 8,
1987.*

(Also reported in 403 N.W.2d 438.)

65

For the appellant there was a brief (in the court of appeals) by *Stephen D. Meyer* and *corporation counsel for Douglas county,* Superior, and oral argument by *Stephen D. Meyer.*

For the respondent there was a brief (in the court of appeals) by *Robert Edwards,* Duluth, MN and the cause was argued by *James Drill,* New Richmond.

There was an amicus curiae brief by *James M. Peterson,* and *Wisconsin Counties Association,* Madison.

There was an amicus curiae brief (in the court of appeals) by *James A. Drill, Lila M. Hambleton* and *Doar, Drill and Skow, S.C.,* New Richmond.

DAY, J.   This case comes to us on certification from the court of appeals and is an appeal from an order of the circuit court for Douglas county, Hon. Robert F. Pfiffner, Reserve Circuit Judge, ordering that Douglas county pay Attorney Robert Edwards $7,300 for his court-ordered legal services assisting Mr. William Lehman in his *pro se* defense on various criminal charges.

This order also found that the members of the Douglas County Board of Supervisors "wilfully and contemptuously" disobeyed an earlier court order to pay Attorney Edwards, and each member was ordered

confined to the Douglas County Jail for six (6) months or until the contempt was purged by payment of the entire fee. The contempt orders were stayed pending appeal.[1]

At issue is the trial court's authority to appoint Attorney Edwards. Specifically, the following questions are presented: 1) Does the court have the inherent power to appoint counsel to assist an indigent criminal defendant who elects to proceed *pro se* if the State Public Defender declines to appoint counsel for him under the administrative rules of the Public Defender Board?; 2) If the court has such inherent power, does the court have the authority to appoint an attorney for this position that is not licensed to practice in the State of Wisconsin?; 3) Are the

---

[1] "WHEREAS, this matter came on for hearing on April 2, 1985, with Corporation Counsel Stephen D. Meyer making a special appearance on behalf of Douglas county, and Robert Edwards having appeared in his own behalf on the issue of payment of his attorneys fees in this matter; and

"WHEREAS, this Court then made a record tantamount to a memorandum decision on that date.

"IT IS ORDERED that Douglas county pay Mr. Robert Lee Edwards the sum of $7,300.00 for his representation of and assistance to William Lehman.

"IT IS FURTHER FOUND THAT each and every supervisor on the Douglas County Board of Supervisors wilfully and contemptuously disobeyed this court's order that Mr. Edwards be paid his initial month's billing in this matter, and each is ordered to be confined in the Douglas County Jail for a period of six (6) months or until purging this contempt by payment by Douglas County of the entire $7,300.00 to Mr. Edwards; however.

"IT IS ORDERED that execution of these orders is stayed pending resolution by the court of appeals, provided that Douglas county appeals these final orders within a reasonable time.

"Dated this 15 day of April, 1985."

reasonable attorney fees of court-appointed counsel an "operating cost" of the circuit court which must be paid by the county pursuant to sec. 753.19, Stats.,[2] if no other provisions of the statutes provide for payment of such counsel?; 4) Did the circuit court lack the jurisdiction: a) to order the county to pay the attorney fees without first starting a separate action against the county for such fees?; or b) to hold the members of the County Board in contempt for refusal to pay such fees?

We conclude that the trial court had the inherent authority to appoint counsel to assist the Defendant in his *pro se* defense. Further, we conclude that the trial court had the authority to appoint counsel in this case, despite the fact that counsel was not licensed to practice law in this state. The attorney fees constitute an operating cost of the Douglas county circuit court within the meaning of sec. 753.19, Stats. Therefore, the county is liable for payment of the reasonable attorney fees incurred as a result of the appointment. We also conclude that the circuit court was not required to commence a separate action against the county in order to seek payment of the fees and had jurisdiction and authority to order payment. However, we find that the trial court did not follow the statutory procedure for assessing contempt sanctions against the members of the County Board. We therefore strike

---

[2]Section 753.19, Stats., provides:

"**753.19 OPERATING COSTS; CIRCUIT COURT.** The cost of operation of the circuit court for each county, except for the salaries of judges and court reporters provided to be paid by the state, and except for the cost assumed by the state under this chapter and chs. 40 and 230, and except as otherwise provided, shall be paid by the county."

that part of the order dealing with contempt of court. In all other respects the order is affirmed.

The underlying criminal case out of which the present case arose has its origins in a 1980 trial at which William Lehman was convicted of armed robbery, concealing identity, escape and operating a motor vehicle without the owner's consent. In 1982, this court reversed the conviction and ordered a new trial on Lehman's plea of not guilty by reason of mental disease or defect. *State v. Lehman,* 108 Wis. 2d 291, 321 N.W.2d 212 (1982). Judge Robert F. Pfiffner was assigned to the case in December of 1983. Judge Pfiffner was the fourth judge to be assigned to the case. Mr. Lehman had five separate attorneys appointed for him through the office of the State Public Defender. Lehman had fired four of these attorneys, and the fifth attorney withdrew due to a disagreement between Lehman and the attorney.

Prior to the appointment of the fourth attorney, Lehman was advised by the State Public Defender that it would make no further appointments in his case. Despite this warning, another attorney was appointed for him and he was again told this was the last attorney that would be appointed for him.

At an August 27, 1984 hearing, three motions brought by Lehman were heard. The first of these motions was a request by Lehman to appear *pro se.* This motion was not opposed by the State, and the court, finding that Lehman understood the issues involved, and recognizing his right to appear *pro se,* granted the request. The Public Defender was ordered to appoint counsel to assist him.

At a September 18, 1984 hearing the court again dealt with the problem of appointment of counsel. The court stated that it contacted the State Public Defend-

er's district office in Ashland and the Public Defender declined to appoint further counsel for Lehman since it had already appointed five attorneys and it was not required to furnish further counsel under its administrative regulations.[3] Lehman stated that his own efforts to secure counsel in the Douglas county area had proven unsuccessful.[4]

Also dealt with at the September 18th hearing was the subject of Lehman's indigence. Evidence was entered, and the State did not contest Lehman's indigence. The court found Lehman to be indigent.

---

[3]The administrative regulation cited by representatives of the State Public Defender's Office throughout this case is Wisconsin Administrative Code sec. SPD 2.04, which provides:

**SPD 2.04 PERSON'S RIGHT TO REFUSE SPECIFIC ATTORNEY.** (1) A person may request that the attorney assigned to represent him or her be discharged and that another attorney be assigned, and the state public defender shall honor such request, provided:

"(a) It is the only such request made by the person in that case; and

"(b) Such change in counsel will not delay the disposition of the case or otherwise be contrary to the interests of justice.

"(2) In the event the court or public defender authorizes an attorney to withdraw as counsel, the state public defender shall assign the attorney who next appears on the top of the approriate [sic] certification list and place the original attorney's name on the top of that list. In the event the attorney discharged is a staff public defender, a private attorney may be appointed."

[4]Judge Pfiffner stated that he would give Lehman a list of the lawyers in Douglas county, expressing his intention that "I'm going to appoint somebody, and it's going to be at the expense of Douglas County."

The court then questioned Lehman on his progress in finding an attorney. Several attorneys were suggested by Judge Pfiffner, and each was stricken, for various reasons, as unavailable.

The trial court engaged in the task of trying to locate an attorney that would assist Lehman in his defense. The president of the local bar association was contacted, and several local attorneys were called. The Chief Judge of the Tenth Judicial District, Hon. William D. O'Brien, wrote to J. Denis Moran, Director of State Courts, explaining the nature of Judge Pfiffner's problem, and asked Mr. Moran to request that the State Public Defender make an exception in this case and appoint another attorney.

Mr. Moran did contact the Public Defender's office and received a response from Marcus T. Johnson, Chief of the Trial Division. Mr. Johnson stated that the State Public Defender's office took the position that it had discharged its duties under ch. 977, Stats., and sec. SPD 2.04, Wisconsin Administrative Code and declined to appoint either a member of its staff or a member of the private bar to represent Lehman.

Concerned whether Lehman was knowingly and intelligently waiving his right to counsel, the trial judge, at a November 5, 1984 hearing, questioned Lehman on his decision to appear *pro se.* The court expressed its preference that Lehman have counsel assisting him at trial saying such assistance would benefit the court in allowing the case to go more smoothly.

Judge Pfiffner clearly recognized the role of a "standby" counsel in cases where indigent defendants elect to proceed *pro se.* He stated: "I can have somebody sit stand-by during any trial if you appear *pro se;* and if you got into hot water or you want to ask for some assistance, why I think it would be in the court's interest or benefit to have someone so that the matter could go smoothly ...." The Judge also noted:

"I'm familiar with many cases where the Judge, and I could do the same thing, would have somebody here in the courtroom during any trial proceedings other than proceedings such as we have here, so that if you got in hot water you could turn over and get some help from the guy that's standing by. That's very frequently done. It's going to be done here ...."

A hearing was held on November 13, 1984, to determine whether or not Attorney Robert Edwards should be appointed as stand-by counsel to assist Mr. Lehman in his defense. Mr. Edwards stated that he was admitted to the State Bar of the State of Oklahoma in October in 1981. He was also admitted to the United States District Court for the Northern District of California, the United States District Court for the Western District of Wisconsin, and The United States Tax Court. Attorney Edwards was not licensed to practice law in the State of Wisconsin.

Lehman stated that he was satisfied with Attorney Edwards. The court ruled that although Mr. Edwards was not licensed to practice law in the State of Wisconsin, he would be "permitted to practice law in the State of Wisconsin for the purpose of the defense of Mr. Lehman as his assistant in his *pro se* defense only, and that he serve in that capacity at an hourly rate of $50 per hour ...." The court also ordered Douglas county to pay for Mr. Edward's services.

At a January 10, 1985 hearing, the Corporation Counsel for Douglas county informed the court that the County Board had passed a formal resolution stating that the county would not pay the fees of counsel appointed to assist Lehman in his defense.

Following the trial, the court held a hearing on April 2, 1985, in order to discuss the issue of payment of Mr. Edwards' fees. The court found that Mr. Edwards should be paid for one hundred and forty-six hours of time spent on the case and that the time spent was reasonable and necessary. By order dated April 15, 1985, Douglas county was ordered to pay the sum of $7,300 to Mr. Edwards for his assistance to Lehman.

The court also ruled that the County Board was in contempt for willfully disobeying the court's order to make the initial payment of the fees within ten days as ordered, and that each of the members would be confined in the county jail for a period not to exceed six months or until they were purged of the contempt by authorizing payment. Execution of the contempt order was stayed in the event that the county appealed from the order. Mr. Edwards' fees have not been paid.

Douglas county makes several arguments to this court. First, in order to obtain payment of the attorney fees, some type of court action should have been commenced against Douglas county. It is maintained that such action was required under sec. 801.02(1), Stats.,[5] and the failure to bring any action means that the trial court "never acquired personal jurisdiction over Douglas county." Second, it is asserted that any inherent power possessed by the trial court to appoint

---

[5] "801.02 COMMENCEMENT OF ACTION. (1)  A civil action in which a personal judgment is sought is commenced as to any defendant when a summons and a complaint naming the person as defendant are filed with the court, provided service of an authenticated copy of the summons and of the complaint is made upon the defendant under this chapter within 60 days after filing."

counsel only arises "when the judicial system bears the legal *duty* of appointing counsel," and that once Lehman waived his right to counsel by electing to proceed *pro se,* there was no legal duty to appoint counsel and the trial judge had no authority to appoint counsel. Third, Douglas county argues that the legislature has delegated the duty of providing and compensating counsel for indigent criminal defendants who request representation to the Office of the State Public Defender. The county cites several public policy reasons underlying this choice, including cost efficiency, assurance of attorney competency, uniformity in determining indigency and eligibility, and the expertness of handling these matters.

Douglas county states that upholding the appointment of counsel in this case would set a "dangerous" precedent:

> "This precedent encourages defendants to reject [State Public Defender] attorneys until a judge will provide them one at county expense. Such defendants could bargain with the district attorney knowing that he would be under greater pressure . to plea bargain, because his own electorate would *directly* bear the costs of further defense."

Fourth, Douglas county contends that the sole authority regulating the practice of law in Wisconsin rests in the Supreme Court and this court has exercised its authority to completely prohibit the practice of law by attorneys unlicensed to practice law in Wisconsin. This court is cited to SCR 10.03(4), which provides:

> "A judge in this state may allow nonresident counsel to appear in his or her court and participate in a particular action or proceeding in associa-

tion with an active member of the State Bar of Wisconsin who appears and participates in the action or proceeding."

It is maintained that the foregoing provision means that the trial judge did not have the power to appoint Mr. Edwards, an attorney not licensed to practice law in Wisconsin. Douglas county also argues that any "hypothetical" discretion vested in the trial judge to appoint counsel was abused.

Finally, the county asserts that the contempt order is void on its face, since the trial court "ignored the statutory procedure" outlined for contempt proceedings.[6] The county points out that the board members are named personally, despite no service of pleadings. The county asks that the contempt order be vacated.

An *Amicus Curiae* brief was filed on behalf of J. Denis Moran, Director of State Courts, and Judge Pfiffner. We note that the named Respondent in this case was Robert Edwards, the attorney appointed by the trial judge. In a letter filed with the court of appeals, Mr. Edwards stated that it was his belief that he should not have been named as a Respondent in this action, and declined to participate. Although Mr. Edwards' letter touched on some of the legal issues raised in this case, we find it more helpful to refer to the *Amicus* brief[7] filed on behalf of the trial judge in

---

[6]The procedure in contempt proceedings is set forth in ch. 785, Stats. The two types of procedures are described as "summary" and "nonsummary," sec. 785.03(1), (2). The two types of sanctions a court may impose, "remedial" and "punitive" are set forth in sec. 785.04.

[7] An *Amicus* brief was also filed by the Wisconsin Counties Association. We do not refer to this *Amicus* brief in the opinion. All

order to better assess the arguments supporting the trial judge's decision to appoint counsel.

We begin by noting that Judge Pfiffner, under what appear to have been extraordinary and difficult circumstances, acted properly and reasonably. Further, the Judge's action in appointing Attorney Edwards was well within the scope of the trial court's power. This court has explicitly stated that courts possess the inherent power to appoint counsel: "It is within the inherent power of the courts to appoint counsel for the representation of indigents." *State ex rel. Fitas v. Milwaukee County,* 65 Wis. 2d 130, 134, 221 N.W.2d 902 (1974).

Douglas county argues that this inherent power is limited to appointment of counsel for those defendants that have not waived their constitutional right to counsel. We disagree. The exercise of the court's discretion in invoking its inherent power to appoint counsel for an indigent is not tied to any constitutional right that the indigent may have to counsel. The trial court has the authority to appoint counsel whenever in the exercise of its discretion it deems such action necessary.

The question of whether an indigent defendant who elects to proceed *pro se* and who thereby waives his constitutional right to assistance of counsel nevertheless has a constitutional right to "standby" counsel, if requested, is not presented. We need not, and do not, pass on that question.

There is little doubt that the legislature, in creating the State Public Defender Office, intended to

reference to *Amicus* should be taken to mean the brief filed on behalf of Judge Pfiffner and J. Denis Moran, Director of State Courts.

structure a comprehensive state-wide program to deal with the appointment of counsel for indigent defendants. There is no support for the argument, however, that the creation of the program "occupied the field" with respect to appointment of counsel or was "exclusive" in the sense that the inherent power of the court was thereby negated or circumscribed in circumstances where the Public Defender declines to act.

We do not agree with Douglas county that approving the actions of the trial judge sets a dangerous precedent. It is purely speculative to assert that indigent defendants would be encouraged to reject Public Defenders solely to attain a position whereby they could more effectively plea bargain with the district attorney due to the spectre of imposing this cost of stand-by counsel on the county.

Trial judges, in this matter as in many others, are called upon to exercise discretion in determing whether the appointment of "standby" counsel is necessary. The decision to appoint stand-by counsel in this case was based, as it should be, on a determination that the needs of the *Trial Court* and not the Defendant, would be best served by doing so. The Defendant, Lehman, elected to proceed *pro se,* and he had a constitutional right to do so. *Faretta v. California,* 422 U.S. 806 (1975); *Moore v. State,* 83 Wis. 2d 285, 265 N.W.2d 540 (1978).

The United States Supreme Court dealt with the issue of stand-by counsel in *McKaskle v. Wiggins,* 104 S. Ct. 944 (1984). Although the question raised in *McKaskle* concerned whether the appointment of stand-by counsel impinged on the rights of a defendant who chose to appear *pro se* and who voiced objections to the appointment, the court's comments are informative:

77

"A defendant's sixth amendment rights are not violated when a trial judge appoints standby counsel—even over the defendant's objection—to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals. Participation by counsel to steer a defendant through the basic procedures of trial is permissible even in the unlikely event that it somewhat undermines the *pro se* defendant's appearance of control over his own defense." *McKaskle,* 104 S. Ct. at 954.

*McKaskle* makes clear that it is the interests of the trial court that are being served when the court elects to appoint a stand-by counsel for a *pro se* defendant. The record in the instant cases reveals that Judge Pfiffner's appointment was motivated by concerns that the trial proceed in an orderly fashion.

Since the chief purpose of the appointment of counsel in cases like the present one is to serve the interests of the trial court, it makes sense to describe the decision to appoint stand-by counsel as a decision which lies within the discretion of the trial court. Other courts similarly describe the stand-by counsel appointment as discretionary. *See, e.g., State v. Easton,* 35 Or. App. 603, 582 P.2d (1978); *Reliford v. People,* 579 P.2d 1145 (Colo. 1978); and *State v. Burgin,* 539 S.W.2d 652 (Mo. 1976). The use of stand-by counsel for *pro se* defendants is evident in several other jurisdictions. *See, e.g., Bowen v. State,* 606 P.2d 589 (Okl. Cr. 1980); *Shelton v. State,* 627 S.W.2d 18 (Ark. 1982); *Parker v. State,* 455 So. 2d 130 (Ala. Cr. App. 1984); *Junior v. State,* 537 P.2d 1204 (Nev. 1975).

We recognize that Judge Pfiffner referred to Attorney Edwards as "assistant counsel." The use of this term may tend to cause some confusion since it is similar to the phrasing of the sixth amendment, which grants an accused the right to "assistance of counsel."

We prefer that counsel appointed under circumstances similar to those present here be referred to as "stand-by" counsel. Reference to "assistant Counsel" may suggest that the trial judge was appointing a "co-counsel" contrary to this court's holding in *Moore.* In *Moore,* this court held that a defendant "has no constitutional right to be actively represented in the courtroom both by counsel and by himself." 83 Wis. 2d at 300. However, this is not a *Moore* case since the counsel here was appointed under the trial court's authority to appoint standby counsel as a matter of discretion.

The use of the term "assist" in describing the function of "stand-by" counsel is understandable. It helps to describe the scope of the stand-by counsel's job. The nature of the stand-by counsel role has been set out in the American Bar Association's *Standards for Criminal Justice,* Vol. I (2d Ed.) 1980. *Standard* 6–3.7 provides:

> "When a defendant has been permitted to proceed without the assistance of counsel, the trial judge should consider the appointment of standby counsel to assist the defendant when called upon and to call the judge's attention to matters favorable to the accused upon which the judge should rule on his or her motion. Standby counsel should always be appointed in cases expected to be long or complicated or in which there are multiple defendants."

It is clear Judge Pfiffner understood that the role that Attorney Edwards would play would be somewhat broader than what may be termed the traditional stand-by counsel role, i.e., that of sitting with the defendant to assist him during trial. When Judge Pfiffner questioned Lehman on what role the stand-by counsel should play, Lehman responded: "I expect a man who will take direction in doing research for me. A man who will be responsive to reasonable requests such as preparing motions, filing motions, interviewing witnesses, locating witnesses." Additionally, an examination of the bills submitted by Attorney Edwards reveals that a good deal of time was spent in discussions with Lehman, at the Law Library, and reviewing the file and transcripts. Most of the work involved pre-trial preparation.

Our upholding of this appointment of Attorney Edwards confirms that the duties performed by counsel were within the scope of the appointment as stand-by counsel. We note that other courts have employed the term "stand-by" counsel in a broad sense, encompassing assistance in pre-trial preparation. *See, e.g., State v. Hahn,* 106 Wash. 2d 885, 726 P.2d 25 (1986) (Counsel appointed as research assistant and backup counsel); *Jones v. State,* 449 So. 2d 253 (Fla. 1984) (At time defendant elected to proceed *pro se,* court was told stand-by would be used to assist in preparing and conducting defense); *State v. Carpenter,* 390 So. 2d 1296 (La. 1980) (Stand-by counsel appointed to assist defendant in obtaining legal materials and in contacting witnesses); *Engle v. State,* 467 N.E.2d 712 (Ind. 1984) (Stand-by counsel to provide defendant with access to legal materials); *Pote v. State,* 695 P.2d 617 (Wyo. 1985) (Stand-by counsel helping with pre-trial discovery, including witnesses); *Cardenas v. State,* 695

P.2d 876 (Okla. Cr. 1985) (On defendant's claim he was improperly denied access to law library, court stated functional equivalent of law library came in form of stand-by counsel); *Hollis v. State,* 95 Nev. 664, 601 P.2d 62 (1979) (Requirement that defendants have a right of access to adequate law library as part of their right to self-representation was satisfied by assistance of stand-by counsel). We wish to make clear, however, that the scope of the duties of stand-by counsel lies within the discretion of the trial judge, as to whether it will be of benefit to the court in the trial of the case.

We find that SCR 10.03(4) (providing that non-resident counsel may be permitted to appear with an active member of the state bar) is not a bar to Judge Pfiffner's appointing attorney Edwards in this instance. We agree with *Amicus* that it is not clear that SCR 10.03(4) applies to this situation.

*Amicus* argues that this court must look at the historical context within which the rule was adopted and the underlying intention behind the rule. The general rule, which, according to *Amicus,* Wisconsin agrees with, is that an attorney licensed to practice law in a sister state may be permitted to make an appearance in state court, as a matter of comity. The purpose of SCR 10.03(4) is to control the unauthorized practice of law and assure that the public "is not put upon or damaged by inadequate or unethical representation." It is contended that the purpose of the rule was not to seal off the discretionary *pro hac vice* authority of the courts to appoint, in extraordinary circumstances, counsel not licensed to practice in the State of Wisconsin. *Amicus* stresses that extraordinary circumstances existed in this case.

81

We agree with *Amicus* that the purpose of SCR 10.03(4) was not to limit the discretionary *pro hac vice* authority of the courts to appoint counsel not licensed to practice law in the State of Wisconsin. The trial judge went to great lengths to attempt to secure an attorney willing to serve as stand-by counsel. In addition, the trial judge was careful to examine Attorney Edwards as to his background, his experience, and his credentials. Thus, in assuring that neither the public, the court, nor Lehman would be harmed by inadequate or unethical representation, Judge Pfiffner made sure that the purposes underlying SCR 10.03(4) were not thwarted by the appointment.

Having determined that the court had the inherent power to appoint the stand-by counsel, and that, on this particular occasion, the appointment of an attorney not licensed in Wisconsin was acceptable, we now turn to the question of who must pay the attorney's fees. We conclude that *Romasko v. Milwaukee,* 108 Wis. 2d 32, 321 N.W.2d 123 (1982) is informative, and agree with *Amicus* that its principles should apply here.

In *Romasko,* this court held that "where a guardian *ad litem* is appointed by a court to represent an indigent minor and no specifically applicable provision for payment of fees appears in the statute, the county of venue must pay those fees." 108 Wis. 2d at 36–37. It was held that the guardian *ad litem* fees constituted an "operating cost" of the Circuit Court within the meaning of sec. 753.19, Stats., and therefore the county was obliged to pay.

*Amicus* argues that Attorney Edwards' fees should be characterized as an operating cost of the

circuit court under sec. 753.19, Stats., given that no other statutory section provides for payment of his fees. We agree, and find the rationale expressed in *Romasko* applicable to the instant case.

In finding that the guardian *ad litem* fees were an operating cost of the circuit court, the *Romasko* court noted that the appointment of the guardian *ad litem* aided the court: "the guardian *ad litem's* overarching duty is to assist the court in its governmental function of seeing to it that justice is done to those who are defenseless and who are the objects of the special concern of government." *Id.* at 38. As with the guardian *ad litem,* the services rendered by the stand-by counsel are actually services to the court.

The trial judge determined that the appointment of the stand-by counsel was essential, and therefore, as in *Romasko,* the resulting fees were a "necessary cost of the operation of the court . . . ." *Id.* at 42. In addition, payment is not mandated by other provisions of the statutes. In this situation, it is appropriate that the duty of payment falls on the county under sec. 753.19, Stats.

We note that the duty of the trial court to appoint counsel to defend indigents, and the obligation of the county to pay for such services, were discussed in the early case of *Carpenter v. County of Dane,* 9 Wis. 249 (*274) (1859). In *Carpenter,* an attorney was appointed by the trial court to defend an indigent individual accused of larceny. The claim for payment of attorneys fees was presented to the County Board of Supervisors; the Board refused to pay. The county argued that since there was no provision in the constitution or statutes fixing the liability upon the county for such services, the county could not be held liable. *Id.* at 250.

The *Carpenter* court nevertheless concluded: "It seems eminently proper and just that the county, even in the absence of all statutory provision imposing the obligation, should pay an attorney for defending a destitute criminal." *Id.* at 252. The court also stated that the power and duty of the court to appoint counsel was "as clear and complete as though expressly enjoined upon them by statute," and that the obligation of the county to pay was similarly "clear and manifest." *Id.* at 253. *See, also, Dane County v. Smith,* 13 Wis. 654 (*585) (1861).

In *Sparkman v. State,* 27 Wis. 2d 92, 98–99, 133 N.W.2d 776 (1965), this court commented on the holdings in *Carpenter* and *Smith* that the trial court had the power and the duty to appoint counsel at county expense:

> "The grounds for the existence of this power sprang from 'necessities of the case' and the demands of 'public justice and sound policy.' This power and duty were based on common law and supported by arguments from the various provisions of sec. 7, Art. I, of the Wisconsin Constitution providing an accused with the right to assistance of counsel and with other rights calculated as necessary to secure a fair trial; the justice and humane result arising from the exercise of such power; the interest of the public in the correct and fair administration of its criminal laws; and the practice of the courts from the first organization of government."

We recognize that the *Carpenter* and *Smith* cases arose prior to the advent of the State Public Defender system. These cases support the proposition that when the State Public Defender's Office declines to act, and is therefore not involved, and even though there is no specific statute governing attorney fees, this cost may be imposed on the county. We find that the "necessities of the case" and the demands of "public justice and sound policy" require that counsel be appointed, that counsel be compensated, and that the county be obligated to pay.

We conclude that the county is in error in arguing that the State Public Defender should be charged for this representation. Attorney Edwards was not appointed by the Public Defender under the terms of ch. 977, and specifically sec. 977.05(5)(a), Stats.[8] He was not appointed under the regular procedures set out in ch. 977 and therefore sec. 977.08(4),[9] providing for payment of private local attorneys, is inapplicable.

We also note that the imposition of costs on the county is supported by this court's decision in *Fitas*. In *Fitas*, the court determined which branch of govern-

---

[8] "977.05 STATE PUBLIC DEFENDER .... POWERS. The state public defender may: (a) Delegate the legal representation of any person to any member of the state bar of Wisconsin certified under s. 977.08."

[9] "977.08 APPOINTMENT OF COUNSEL .... (4) At the conclusion of each case, any private local attorney who has been appointed shall submit a copy of his or her bill to the state public defender. The state public defender shall review the bill and reject it or approve it in whole or in part. The state public defender shall then pay the bill according to the rates under sub. (4m). Any attorney dissatisfied with the decision of the state public defender regarding the bill may have the decision reviewed by the board. The subsection does not apply if the attorney is working under an agreement authorized under s. 977.02(7m)."

ment was required to appoint and compensate counsel required in administrative proceedings for the revocation of probation and parole. After concluding that the appointment of counsel should be made "by a Judge or under the aegis of the judicial system," the court dealt with the argument that the county should bear the expense. 65 Wis. 2d at 134. The State Department of Health and Social Services cited *Carpenter* and *Smith* in support of the argument that the county should pay.

The *Fitas* court distinguished these cases, noting that in *Carpenter,* "The court, in essence, found the obligation to defend reciprocal to the prosecution function paid for by the county. Were we to follow this rationale to its logical conclusion, the department is hoist on its own petard, for a revocation proceeding is brought and paid for by employees of the state, not employees of the County of Milwaukee." 65 Wis. 2d at 135. In contrast, the charges against Lehman were prosecuted by Douglas county. Thus, the reciprocity argument discussed in *Carpenter* offers support for the imposition of cost of counsel on the county.

Douglas county argues that the trial court lacked jurisdiction with respect to the order which required the county to pay the attorney's fees. This purported lack of jurisdiction allegedly arises due to the trial court's failure to bring a separate action against the county. We find no merit in these arguments.

The circuit court was not required to initiate a formal action against Douglas county to obtain payment of the attorney fees. The power to order Douglas county to pay the fees is part of the court's incidental powers. This court has stated:

"Circuit courts have the incidental power necessary to preserve the full and free exercise of their judicial functions, and to that end may, in appropriate cases, make *ex parte* orders without formally instituting an action to secure the desired relief." *State v. Holmes,* 106 Wis. 2d 31, 40, 315 N.W.2d 703 (1982), quoting *In re Court Room,* 148 Wis. 109, 121, 134 N.W. 490 (1912).

The various powers of courts were considered in *State v. Cannon,* 199 Wis. 2d 401–402, 226 N.W. 385 (1929) where it was said that courts are:

"[E]ndowed with all judicial powers essential to carry out the judicial functions delegated to them .... These powers are known as incidental, implied, or inherent powers, all of which terms are used to describe those powers which must necessarily be used by the various departments of government in order that they may efficiently perform the functions imposed upon them by the people."

Since it was within the inherent power of the court to appoint counsel, and the cost is properly characterized as an operating cost of the court, the court had the incidental power to order Douglas county to pay the cost *ex parte* without commencing a separate action.

Douglas county argues that the trial court lacked jurisdiction over the members of the county board since the procedures under ch. 785 were not followed, and that therefore the order is void. The record shows that Judge Pfiffner did not follow the statutory procedure.

The contempt power does not arise from the statute: "It is well settled beyond any question in Wisconsin that all courts have an inherent power to

hold in contempt those who disobey the court's lawful orders. This power exists independently of statute. . . ." *In re Hon. Charles E. Kading,* 70 Wis. 2d 508, 543b, 235 N.W.2d 409 (1975). Despite the fact that the power exits independently of statute, this court ruled, over one-hundred years ago, that when the procedures and penalties for contempt are prescribed by statute, the statute controls. *State ex rel. Lanning v. Londsale,* 48 Wis. 348, 367, 4 N.W. 390 (1880). This case has not been overruled, and we see no reason to do so in the present case.

Although the trial judge did not comply with statutory procedures with respect to contempt sanctions, the question of contempt is no longer of immediate concern. On the basis of our resolution of the other issues presented, we have determined that the trial court had the inherent power and authority to appoint stand-by counsel, and that the county is obliged to pay counsel's fees. We note that Douglas county has not challenged the reasonableness of the attorney fees allowed in its brief to the court of appeals.[10] The trial court found the fees to be necessary and reasonable. We affirm this part of the order ordering payment of $7,300 to Attorney Edwards. However, we do strike paragraph four of the April 15, 1985, trial court order related to the finding of contempt and the imposition of sanctions. The rest of the order remains in effect.

---

[10]In its notice of appeal, Douglas county states that it appeals from the April 15, 1985 order (filed June 4, 1985) "in its entirety." The county added: "This appeal involves, however, only those aspects of the underlying criminal proceeding purporting to obligate Douglas county to pay certain attorneys' fees for services rendered in that criminal proceeding."

On the basis of the foregoing we therefore modify the order of the circuit court dated April 15, 1985, and, as modified, the order is affirmed.

*By the Court.*—Order modified and, as modified, affirmed.