Conway, Appellant, v. Sauk County, Respondent.
State, Plaintiff, v. Welter, Defendant.

*March 8—April 2, 1963.*

601

For the appellant there was a brief and oral argument by *Vaughn S. Conway* of Baraboo, *in pro. per.*

For the respondent there was a brief and oral argument by *Paul M. Newcomb,* corporation counsel.

FAIRCHILD, J.   Statutory authority for payment of fees and disbursements to counsel appointed for an indigent defendant is found in sec. 957.26, Stats.   That section formerly limited the compensation for services to $25 for each half day in court, $15 for each half day of preparation, not exceeding five days, and $15 for each half day attending at the taking of depositions.   Ch. 500, Laws of 1961, effective September 30, 1961, amended this section, striking out the limits and the material portion now reads:

"The county shall pay the attorney so appointed such sum as the court shall order, pursuant to sec. 256.49, as compensation and his actual disbursements for necessary travel and other expense, automobile travel to be compensated at not over seven cents a mile."

Sec. 256.49, Stats., reads in material part:

". . . the court appointing the attorney shall, after the services of the attorney have been performed and the disbursements incurred, fix the amount of his compensation for the services and provide for the repayment of disbursements in such sum as the court shall deem proper, and which compensation shall be such as is customarily charged by attorneys in this state for comparable services."

Apparently the legislature considered that the former specific limitations provided inadequate compensation for services of court-appointed counsel and the legislature accordingly authorized the appointing court to fix a fee which would be fair and reasonable for the services reasonably necessary under the circumstances. It seems to us that in applying the statute two elements are involved: (1) What services to the defendant were reasonably necessary to constitute adequate "Assistance of Counsel for his Defense?" [1] (2) What money value is to be placed upon the services so rendered?

Our statute prescribes no formula for determining the character and extent of services required, but does provide a standard for the determination of the value of the services, *i.e.,* the customary charge by attorneys in Wisconsin for comparable services.

On this appeal, Mr. Conway advances three propositions, in substance, (1) that appointed counsel's good-faith determination of the services necessary shall be conclusive; (2) that the allowance should be guided by the minimium-fee schedule of the State Bar; and (3) that he was entitled to a

---

[1] The quoted phrase is borrowed from the Sixth amendment to the constitution of the United States, although not directly applicable to the state. Sec. 7, art. I of the Wisconsin constitution, provides that "the accused shall enjoy the right to be heard by himself and counsel." Although the state presumably has the power to require lawyers to provide indigents with the required services without compensation, the legislature has chosen to compensate them and it has long been the judicial policy of the state that they be compensated. *Carpenter v. Dane County* (1859), 9 Wis. 249 (*274), 252 (*277).

specific allowance or disallowance of each item in his statement.

## Determination of Services Required.

The character and extent of the services reasonably required must be determined upon the basis of the circumstances in which the particular defendant has found himself. The court is not, because of the indigency of the accused, to be niggardly in determining what services were reasonably required. On the other hand, unnecessary services are not to be paid for out of the public treasury.

Determination of the character and extent of the services reasonably necessary requires the careful exercise of judgment. When the court fixes the attorney's fee after trial, it has certain advantages of hindsight which counsel did not have when he prepared for the defense. All practicing attorneys have shared the experience, however, when the time for billing a client has arrived, of forgoing charges for time hopefully spent in research and investigation on "thin leads" which turned out to be fruitless. This is one of the hazards of the profession. The court should carefully consider the judgment which the attorney exercised in deciding what investigation and preparation would be useful, but the ultimate responsibility rests on the court and it is not bound by the attorney's decision. The court has the power and duty to take into consideration its own observations of the trial and the facts developed by the evidence.

## Minimum-fee Schedule as a Guide.

The schedule of minimum fees of the State Bar or other bar associations constitutes only the collective judgment of the committees or groups that passed upon it as to a scale of fees generally fair for the types of services listed. They are some evidence relevant to the question of a reasonable charge for services, but have no other legal force.

". . . a lawyer's charge for services, even when based upon the recommended schedule, is always subject to the courts' determination of reasonableness." [2]

"In determining the customary charges of the Bar for similar services, it is proper for a lawyer to consider a schedule of minimum fees adopted by a Bar Association, but no lawyer should permit himself to be controlled thereby or to follow it as his sole guide in determining the amount of his fee." [3]

*Review of the Allowance Made for Services.*

The record before us consists only of Mr. Conway's application and statement of services, the statements of the present and former district attorneys and the remarks of the court in making its decision. Judge BEILFUSS, of course, had the benefit of his observation and recollection of the trial. We do not have the transcript of the trial before us.

We think that in matters of this kind, it would be good practice, where the attorney has submitted a record of time expended, but where the judge bases the allowance upon a conclusion that part of the time was unnecessarily or unproductively expended, that the judge record his reasons for such conclusion. We would have preferred a more-specific statement in the case before us, although we do not consider the absence thereof as ground for reversal.

It seems to us that the responsibility must rest primarily upon the trial court and that the proper test for review on appeal is whether the record demonstrates that the allowance made by the court was clearly unreasonable. [4]

[2] *Lathrop v. Donohue* (1960), 10 Wis. (2d) 230, 249, 102 N. W. (2d) 404.

[3] Supplement to 32 Wisconsin Bar Bulletin (February, 1959), pp. 12, 14, 15, Canons of Professional Ethics, Canon 12, Fixing the Amount of the Fee.

[4] See *Blasi v. Drafz* (1960), 12 Wis. (2d) 14, 20, 106 N. W. (2d) 307, in which this court, in construing a similar statute (sec. 256.48), stated that the section in question "makes the allowance of fees [for guardians *ad litem*] discretionary with the trial court."

The circuit court considered that this trial should have consumed no more than five weeks, or 30 days of trial, sessions having been held six days per week. Tested against the State Bar minimum fees of $150 per day for trial of criminal cases and $18 per hour for consultation and office work, the allowance of $6,500 is sufficient to cover the 30 days of trial, and 111 hours outside of trial. Mr. Conway indicated willingness to accept $100 per day for trial time and $15 per hour for other work. We are advised, for example, that the executive committee of the Dane County Bar Association has recommended to Dane county lawyers who may be appointed as counsel that they submit bills on the basis of two thirds of the normal fees. Although the indigency of the defendant is not a proper reason for reducing the quality of the services, the certainty of payment out of the public treasury suggests that some discount of the rates of charge is reasonable. At a rate of $100 per day for trial and $12 for other work, $6,500 would cover the five weeks of trial plus 292 hours outside of trial. We are unable to find the allowance clearly unreasonable.

### Disbursements.

We note, of course, that the $6,500 allowed by the circuit court was intended to cover reimbursement for expenses as well as compensation for services. We have considered it as solely an allowance for fees because we are of the opinion that the circuit court did err in failing to make a specific separate allowance of such disbursements as the court considered justified. The disbursements claimed included relatively small items for photographs, copies of reports, drawings, and items which we assume were obtained for demonstrative purposes. Larger amounts were paid for preparing certain plats and sketches as well as partial transcripts. It appears that the plats and sketches were actually used by all

parties during the trial. The court's chief objection to some of the larger items appears to have been that Mr. Conway did not apply in advance for permission to make the expenditure, rather than that the expenditure was inadvisable. The statute does provide for the allowance of automobile expense at not to exceed seven cents per mile. No amount was claimed, although the statement shows that 5,066 miles were traveled. Undoubtedly a large portion of this mileage was made necessary by the change of venue since the trial was held at Madison, 43 miles from Baraboo, the county seat of Sauk county and the location of Mr. Conway's office.

We have decided to modify the order so as to allow the full amount of disbursements claimed in addition to the $6,500 already allowed. The circuit court was in error in not making a separate and specific allowance. The disbursements do not seem to have been considered improvident. Although it would be good practice, as suggested by the court, for court-appointed counsel to obtain approval before making substantial disbursements, and such items might properly be disallowed as a matter of policy if advance approval be not obtained, we note here that a substantial sum for automobile travel was not included, though allowable.

*By the Court.*—Order modified so as to direct payment of $7,620.25 to Vaughn S. Conway, $6,500 being compensation for services and $1,120.25 being repayment for actual disbursements and, as so modified, affirmed.

WILKIE, J., took no part.

HALLOWS, J. (*dissenting*). I must respectfully dissent. After a long history of underpaying attorneys for the defense of an indigent accused, the legislature by ch. 500, Laws of 1961, amended sec. 957.26, Stats., the compensation section for court-appointed counsel, to allow compensation pursuant

to sec. 256.49, which was created by ch. 118, Laws of 1957. This section provides the court shall fix the amount of compensation as it shall deem proper and defines such compensation to be "such as is customarily charged by attorneys in this state for comparable services." The mandate was not and is not followed in this case.

The federal constitutional right of "Assistance of Counsel for his Defense," means no subsidiary role by counsel as implied in the majority opinion. The phrase must be understood in its historical context of the common law which denied an accused, rich or poor, the right of counsel in a criminal case. This rule, changed by statute in England in 1836, was rejected by our federal and state constitutions. Today the constitutional mandate includes the right of an indigent accused in felony cases to have assigned an experienced, competent, and zealous attorney to represent him. Such assignment is required by the twin principles of justice under law and equal justice for the accused if those principles are to mean more than empty phrases in our democracy. *Johnson v. United States* (App. D. C. 1940), 110 Fed. (2d) 562. Likewise, the indigent accused has a right to counsel on appeal. *Douglas v. California* (1963), 372 U. S. 353, 83 Sup. Ct. 814, 9 L. Ed. (2d) 811. The representation by court-appointed counsel admits of no perfunctory performance of duty but demands the conscientious application of full effort, resourcefulness, and ability. Assigned counsel is not cast in the role of a sympathetic spectator to watch the prosecution try its side of the case.

I do not subscribe to the presumption the state has the power to require lawyers to provide indigents with the required service without compensation. *Carpenter v. Dane County* (1859), 9 Wis. 249 (*274), does not so hold and in fact held a county liable for the compensation of an appointed attorney although there was no statute fixing the liability upon the county for such services, saying (p. 252 (*277)):

"It seems eminently proper and just that the county even in the absence of all statutory provision imposing the obligation should pay an attorney for defending a destitute criminal."

In construing sec. 256.49, Stats., the best guide to the customary charge by attorneys in the state for comparable services is the schedule of minimum fees of the State Bar of Wisconsin. The schedule should be recognized by this court as *prima facie* reasonable. We relied on the schedule in *Touchett v. E Z Paintr Corp.* (1961), 14 Wis. (2d) 479, 111 N. W. (2d) 419. In *Lathrop v. Donohue* (1960), 10 Wis. (2d) 230, 102 N. W. (2d) 404, we pointed out the schedule as one of the many worthwhile activities of the State Bar and it was so referred to by the United States supreme court in affirming the Integration of the Bar. *Lathrop v. Donohue* (1961), 367 U. S. 820, 81 Sup. Ct. 1826, 6 L. Ed. (2d) 1191. The schedule of minimum fees was initially the work of the committee of economics of the bar composed of 24 well-known lawyers from all parts of the state. The board of governors of the State Bar adopted it and the State Bar spent approximately $12,000 in publishing and distributing it to the lawyers of the state. It is reported 23 local bar associations have adopted the schedule which represented 4,084 active members, or 83 percent of the 5,220 lawyers in the state as of June 1, 1960. See Herbert L. Terwilliger, The President's Report, 33 Wisconsin Bar Bulletin (August, 1960), p. 40. It is shocking then to find the schedule deprecated in the majority opinion as only constituting a collective judgment of the committee which passed upon it.

In the introduction to the schedule the bar urges the use of the schedule subject to the proscriptions of Canon 12 of Professional Ethics as a realistic basis on which to render services. The Canons of Professional Ethics of the American Bar Association were adopted as rules of this court in Rule 9

of the Rules of the State Bar of Wisconsin. 273 Wis. pp. xi, xx. Canon 12 provides in part:

"In determining the amount of the fee, it is proper to consider: (1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations in itself is controlling. They are mere guides in ascertaining the real value of the service."

These factors are substantially those referred to and also approved in *Will of Willing* (1926), 190 Wis. 406, 209 N. W. 602, *Continental Casualty Co. v. Pogorzelski* (1957), 275 Wis. 350, 82 N. W. (2d) 183, and *Touchett v. E Z Paintr Corp., supra.* For a discussion of each factor and the problem generally, see Anno. Attorneys' Compensation— Amount, 56 A. L. R. (2d) 13.

Applying these factors not to determine whether the trial court abused its discretion but to determine the fact independently thereof under the exception to the great-weight and clear-preponderance-of-the-evidence rule as stated in *Touchett v. E Z Paintr Corp., supra,* I must conclude $6,500 is not reasonable compensation for counsel in this case. The majority reasons that amount of money is sufficient at two thirds the State Bar rate to cover five weeks of trial and 292 hours

of preparation and somehow that was sufficient time at public expense to prepare the defense and present it at the trial of the charge of murder against the indigent. We must recall the words of *Carpenter v. Dane County* (1859), 9 Wis. 249 (*274), 251 (*276):

"But surely the citizens of a county are vitally more interested in saving an innocent man from unmerited punishment than in the conviction of a guilty one. Suppose a man too poor to retain counsel to be put upon trial for an offense involving his liberty for life; the constitution declares that he shall enjoy the right to be heard by himself and counsel."

We have no quarrel with taking two thirds of the State Bar rate as a guide for compensation for court-appointed counsel. Lawyers as officers of the court dedicated to the administration of justice have made from time immemorial and will continue in the best tradition of the legal profession to make sacrifices of time and ability in the aid of indigents. Mr. Conway on oral argument so agreed. However, there is a limit beyond which the public in fulfilling its duty to indigents can expect any lawyer or the legal profession to go. It is this concept and the recognition of the public duty of the rights of indigents which have gained adherents to the public-defender system. There is presently pending in Congress the Criminal Justice Act of 1963 (S. 1057 & H. R. 4816), whose purpose is to provide adequate representation in federal courts of indigent defendants charged with felonies or some misdemeanors and which sets the rate of compensation not to exceed $15 per hour for private attorneys and attorneys furnished by a bar association or legal-aid society.

Counsel was appointed because of his experience and skill in criminal matters and his competence to represent a person charged with murder. Being engaged in daily trial for seven weeks involved a loss of other employment as he could take

care of no other business during that time, nor does a per diem charge reflect the accumulated drain on the physical and nervous system of a trial lawyer. His compensation is gross income; his overhead of maintaining his law office during that time continued. His client was not charged with a minor transgression against society but first-degree murder. The case was consolidated with the trials of two other Illinois men for shooting a Wisconsin police officer. This was an important case to society and to the defendant. The murder and the progress of the trial attracted wide publicity and were front-page news in the daily papers, on the radio, and television.

The main objection to Mr. Conway's bill seems to be he overprepared and overtried the defense. By the hindsight theory, the majority opinion justifies the disallowance of over one half of the work as unnecessary because fruitless and as one of the hazards of the profession. The proper preparation of any important lawsuit as well as many unimportant ones involves research and investigation which perhaps do not turn out to be advantageous to the client. In the defense of an important felony, a lawyer appointed by the court cannot in justice to his client and in the interests of justice go into the trial poorly or partly prepared. One does not know how much preparation is going to prove fruitless until the trial is over. Lawyers are not gifted with clairvoyance any more than judges and should not be penalized for the lack of it.

We are told in the briefs the district attorney estimated the trial would take five weeks and he would call some 50 witnesses. He called 55 witnesses and the trial took seven weeks. In preparing its case, the prosecution had the aid of the Wisconsin Crime Laboratory which spent 1,254 hours on the case. An attorney appointed by the court has no staff of paid investigators. He must do the work himself. The inequality between the prosecution and the defense of an

indigent is a source of great concern of those conversant with the problem. See Equal Justice for the Accused, a report by a Special Committee of the Association of the Bar of the city of New York and the National Legal Aid and Defender Association (1959). True, there is opposition in some quarters to the cost of assigned counsel or a public-defender system; the cost to the county involved in this case was great which, under our present law, the county had to entirely assume. But isn't it but part of the price of democracy?

The trial court stated the trial should have taken no more than five weeks. Reconstructing counsel's statement of services at bar rates produces the sum of $14,783. Taking two sevenths off of both trial and preparation time, on the trial court's statement of excessive time, leaves a bill of $10,560 or approximately $4,000 more than the majority allows. Giving weight to all the factors which this court has said should be taken into consideration, I do not consider $6,500 a fair and reasonable fee for the services rendered by counsel and must respectfully dissent.

I am authorized to state Mr. Justice DIETERICH joins in this dissent.