IN the MATTER OF an ORDER TO PAY
ATTORNEYS FEES IN STATE of Wisconsin v.
James D. NEWMAN: COUNTY OF DOOR, a body
corporate, and Door County Board of Supervisors,
Appellants,

v.

Penelope HAYES-BROOK, Respondent.

Supreme Court

*No. 88–1689. Argued September 7, 1989.—Decided January 3,
1990.*

(Also reported in 449 N.W.2d 601.)

For the appellants there were briefs (in court of appeals) by *Dennis D. Costello,* and oral argument by *Dennis D. Costello,* corporation counsel.

For the respondent there was a brief (in court of appeals) by *Stephen P. Hurley,* and *Hurley, Burish & Milliken, S.C.,* Madison, and oral argument by *Stephen P. Hurley.*

CALLOW, WILLIAM G., J. This is an appeal from an order of the Circuit Court for Door County, Judge Dennis C. Luebke. The order commands the Door County Board of Supervisors to pay attorney fees and expenses to Attorney Hayes-Brook for her representa-

tion of James D. Newman. The order also holds the Door County Board of Supervisors and its members (hereinafter referred to collectively as the County Board) in contempt of court for failing to comply with a previous court order that also required the payment of these attorney fees and expenses to Attorney Hayes-Brook. The order was stayed pending appeal. This court granted the joint petition to bypass the court of appeals.

The County Board raises two issues in this court: first, whether the circuit court had the authority to compensate Attorney Hayes-Brook, who was appointed by the court to provide representation to James D. Newman, an indigent defendant, at hourly rates in excess of those rates set forth in Supreme Court Rule 81.02 (1988);[1] second, whether the circuit court violated SCR 81.01 (1988) when it set the hourly rates of compensation that James D. Newman's attorney would receive before the appointment of Attorney Hayes-Brook. We conclude that under the facts of this case it was proper for the circuit court to compensate Attorney Hayes-Brook at hourly rates in excess of those rates set forth in SCR 81.02 (1988). We also conclude that it was proper for the circuit court to set the hourly rates of compensation that James D. Newman's attorney would receive before Attorney Hayes-Brook accepted the appointment.[2]

---

[1]The rule that governs this case, SCR 81.02 (1988), has been amended. The amended version of SCR 81.02 (SCR 81.02 (1989)), which took effect January 1, 1989, provides, in part, as follows:

**Compensation.** (1) Attorneys appointed by any court to provide legal services . . . for indigents . . . *shall be compensated at the rate of $60 per hour or a higher rate* set by the appointing authority. The supreme court shall review the specified rate of compensation every two years. (Emphasis added.)

[2]As a result of our holding, it is unnecessary to address Attor-

3

On May 21, 1987, James D. Newman (Newman), who at the time had criminal charges pending against him, appeared pro se at his indigency hearing. The indigency hearing was prompted by a letter from Newman to the circuit court in which Newman stated that he had been unsuccessful in obtaining counsel to help him defend against these charges. Apparently, Newman had been attempting to obtain counsel to represent him for approximately five months, but had been unable to do so because his access to his assets was impeded by bankruptcy proceedings. At the indigency hearing, the circuit court directed Newman to seek representation from the State Public Defender's Office. The circuit court also informed Newman that, in the event that the public defender's office declined to represent him, counsel would be appointed for him, at county expense, according to the hourly rates of compensation set forth in the Supreme Court Rules.

At that point, Newman informed the circuit court that, despite his efforts, he had been unable to obtain an attorney at the rates set forth in the Supreme Court Rules. He insisted that no attorney was willing to take his case for less than seventy-five dollars per hour for in-court work and sixty-five dollars per hour for out-of-court work. Based on these representations, the circuit court authorized eighty dollars per hour for in-court work and seventy dollars per hour for out-of-court work if the public defender's office refused to provide representation.

The public defender's office determined that, under the relevant guidelines, Newman was not eligible for representation by that office. The circuit court had strong reservations about the validity of the guidelines but

ney Hayes-Brook's argument that the County Board is estopped from disputing the hourly rates used to calculate her fees.

accepted the public defender's determination that Newman was ineligible under the guidelines as written. The circuit court authorized Newman to obtain counsel to represent him, at the expense of Door county, according to the terms that had been agreed upon earlier—eighty dollars per hour for in-court work and seventy dollars per hour for out-of-court work.

In an order dated June 29, 1987, the circuit court appointed Attorney Hayes-Brook to represent Newman. The order stated that Door county would be obligated to compensate Attorney Hayes-Brook at the rates of eighty dollars per hour for in-court work and seventy dollars per hour for out-of-court work. The order also stated that Door county would pay Attorney Hayes-Brook on a monthly basis for the services she performed.

On August 4, 1987, the circuit court forwarded the first billing statement of Attorney Hayes-Brook to the Door County Clerk of Courts for payment by the County Board. Pursuant to the circuit court's order appointing Attorney Hayes-Brook as Newman's counsel, Door county was charged eighty dollars per hour for in-court work and seventy dollars per hour for out-of-court work.[3]

In a letter dated September 30, 1987, the Door county clerk/administrative coordinator informed the circuit court that there were no funds in the clerk of court's budget to cover Attorney Hayes-Brook's bill. In addition, the county clerk/administrative coordinator sought an explanation from the circuit court regarding its authority to require Door county to pay for Newman's legal fees and expenses.

---

[3]In addition, Attorney Hayes-Brook was compensated at a rate of thirty-five dollars per hour for her travel time outside Door county.

In a letter dated October 8, 1987, the circuit court responded to the letter of the county clerk/administrative coordinator as follows:

> Circuit courts have the inherent power to appoint counsel for an indigent defendant irrespective of the public defender provisions found elsewhere in state statutes and irrespective of determinations of indigency by that agency. It is true that Mr. Newman was found not to be indigent by the public defender's office. It is also true that Mr. Newman has no assets from which to retain counsel. This Court does not agree with the determination of nonindigency made by the public defender's office. I was not going to overturn their determination, however, which would have resulted in an appeal by the public defender's office and delayed trial for an additional nine months to a year. This Court has determined that Mr. Newman is indigent for purposes of these proceedings since all his assets are encumbered and whatever exempt properties he may declare in bankruptcy court are not available to him.

The circuit court stated that its authority to require Door county to pay for Newman's representation was derived from sec. 753.19, Stats., and *Contempt in State v. Lehman,* 137 Wis. 2d 65, 403 N.W.2d 438 (1987).[4]

In a letter dated October 22, 1987, the Door County Corporation Counsel informed the circuit court that he would advise the County Board that the appointment of Attorney Hayes-Brook was proper and was within the

---

[4]In *Lehman* , after commenting on the long-standing duty of Wisconsin courts to provide representation to indigent defendants and the obligation of the county to pay for such representation, this court concluded that "when the State Public Defender's Office declines to act . . . this cost may be imposed on the county" under sec. 753.19, Stats. *Lehman,* 137 Wis. 2d at 83, 85.

6

court's inherent power, and that Door county was obligated to pay the legal fees and expenses of Attorney Hayes-Brook.[5] However, the corporation counsel questioned the circuit court's authority to set hourly rates of compensation for Attorney Hayes-Brook in excess of the rates mandated by SCR 81.02 (1988). The corporation counsel thus requested the circuit court to consider conforming Attorney Hayes-Brook's hourly rates of compensation to the rates set forth in SCR 81.02 (1988).

The County Board passed a resolution on October 27, 1987, that authorized compensation for the services detailed in the first billing statements. The total compensation figure was calculated using rates of eighty dollars per hour for in-court work and seventy dollars per hour for out-of-court work. However, the corporation counsel informed Attorney Hayes-Brook that, in making the payment at these rates, Door county was not waiving its right to challenge the part of the appointment order providing for compensation in excess of the SCR 81.02 (1988) rates.

During her representation of Newman, Attorney Hayes-Brook submitted additional billing statements to the circuit court. On February 15, 1988, the circuit court ordered Door county to pay the amount owed under those additional billing statements.[6] Instead of paying that amount, the County Board adopted a resolution on February 23, 1988, that authorized payment of all fees of

_____

[5]This court recognized in *State ex rel. Fitas v. Milwaukee County,* 65 Wis. 2d 130, 134, 221 N.W.2d 902 (1974), that "[i]t is within the inherent power of the courts to appoint counsel for the representation of indigents."

[6]Apparently, at this point, Newman's trial was over and Attorney Hayes-Brook was no longer providing services to him, although she continued as his counsel until appellate counsel was found.

Attorney Hayes-Brook at the rates set forth in SCR 81.02 (1988). The difference between the court-ordered amount in the billing statements and the amount the County Board paid is $21,985.00; this amount remains unpaid.

Attorney Hayes-Brook apparently filed a remedial contempt motion in an attempt to recover the amount owed under the rates that the circuit court had ordered. On March 18, 1988, a hearing was held on this motion. At the beginning of the hearing, the County Board stipulated to a number of issues it considered extraneous, making the sole issue whether the circuit court had the authority to set hourly rates of compensation in excess of the rates set forth in SCR 81.02 (1988). [7]

[7]These are the items to which the County Board stipulated: that Newman's case was extraordinary and difficult and that the circuit court acted properly and reasonably in appointing counsel for Newman; that the decision to appoint counsel in this case was based upon a determination that the needs of the trial court, not the defendant, would be best served by doing so; that the trial court has the authority and inherent power to appoint counsel whenever in the exercise of its discretion it deems such action necessary and can do so in cases where the public defender declines to act; that the county is liable for the payment of attorney fees and costs incurred as a result of the court appointing counsel for an indigent; that the appointing court, not the county, fixes the amount of attorney fees because the court is in the best position to observe the appointed attorney; that an ex parte order to the board is an appropriate procedure to obtain payment from the county; that Attorney Hayes-Brook acted in good faith and was not derelict in the performance of her duties; that the hours billed and expenses were reasonable in this case; that there is no claim that the compensation should be reduced below the maximum rate set by SCR 81.02; that this case presented extraordinary circumstances; and that the integrity of Attorney Hayes-Brook is not challenged. [footnote continued]

After both parties were heard on the motion, the circuit court upheld its earlier decision to set Attorney Hayes-Brook's hourly rates of compensation at rates in excess of those mandated by SCR 81.02 (1988). The circuit court emphasized its constitutional responsibility to appoint counsel for indigent defendants. The circuit court also emphasized that, due to the unique and complicated nature of Newman's case, Newman was unable to find counsel willing to represent him at the rates set forth in SCR 81.02 (1988). Exceeding the hourly rates set forth in SCR 81.02 (1988) was necessary, the circuit court concluded, in order to satisfy both the court's responsibility to indigent defendants and the state's interest in having Newman's case resolved without great delay.

In an order dated August 11, 1988, the circuit court held the County Board and all but two of its individual members in contempt of court for failing to comply with the previous order regarding the payment of Attorney Hayes-Brook's fees and expenses. The order also required the County Board to compensate Attorney Hayes-Brook for her representation of Newman at the previously-ordered rates of eighty dollars per hour for in-court time and seventy dollars per hour for out-of-court time. The order was stayed pending the outcome of this appeal.

The first issue we address is whether the circuit court had the authority to compensate Attorney Hayes-Brook, who was appointed by the circuit court to provide representation to Newman, an indigent defendant, at hourly rates in excess of those rates set forth in SCR 81.02 (1988). The County Board argues that the use of the word "shall" in SCR 81.01 and 81.02 (1988) means

[footnote continued] These stipulations were in substance made at oral argument in this court.

that the provisions of these rules are mandatory. According to the County Board, because these rules are mandatory, the circuit court was required to set Attorney Hayes-Brook's hourly rates of compensation at the rates set forth in SCR 81.02 (1988).

Although the County Board relies on both SCR 81.01 and 81.02 (1988), an examination of the language of these two rules shows that only SCR 81.02 is involved in this case:

> **SCR 81.01 Compensation of attorneys appointed by court.** Notwithstanding any provision of the statutes, *in all cases where the statutes fix a fee and provide for the payment of expenses of an attorney to be appointed by the court to perform certain designated duties,* the court appointing the attorney, after the services of the attorney have been performed and the disbursements incurred, *shall* fix the amount of his or her compensation for the services and provide for repayment of disbursements in such sum as the supreme court has specified in SCR 81.02. (Emphasis added.)

> **SCR 81.02 Compensation.** (1) Attorneys appointed by any court to provide legal services for that court, for judges sued in their official capacity, for indigents and for boards, commissions and committees appointed by the supreme court *shall* be compensated at the following rates:
> (a)    Court time, $50 per hour.
> (b)    Office time, $35 per hour.
> (c)    Travel time outside the county in which the attorney's principal office is located, $25 per hour.
>
> . . .
>
> (Emphasis added.)

10

It is evident from the language of these rules that SCR 81.01 (1988) applies only when the statutes "fix a fee and provide for the payment of expenses of an attorney to be appointed by the court." In *Romasko v. City of Milwaukee,* 108 Wis. 2d 32, 321 N.W.2d 123 (1982), this court gave a broad definition to the phrase "fix a fee":

> We do not so narrowly construe fixing a fee as to mean that the fee is to be fixed in any particular statute or in a particular monetary amount. If that were true, [SCR 81.01] would be meaningless, for no statute which has been brought to our attention fixes an attorney's fee in a stipulated amount.

*Id.* at 41. This court concluded that SCR 81.01 (1988) was applicable to a demand for payment of attorney fees when a statute provided that the fees of a court-appointed attorney should be paid, even though the statute did not fix the fee in a particular amount. *Id.*

In this case, the parties have not cited, and this court has not found, a statute that requires the payment of Attorney Hayes-Brook's fees. Because no such statute can be found, SCR 81.01 (1988) is inapplicable.

Although SCR 81.01 (1988) is inapplicable, SCR 81.02 (1988) applies generally to the situation in which a court appoints counsel without any statutory authority for that appointment. More specifically, SCR 81.02 (1988) applies where no statute requires the appointment of counsel and where such counsel provides legal services for the appointing court, for judges sued in their official capacity, for indigents, and for boards, commissions, and committees appointed by the supreme court. *See* SCR 81.02 (1988). As has been shown, the circuit court had no statutory authority for Attorney Hayes-Brook's appointment. Rather, the circuit court made the appointment pursuant to its constitutional obligation to

11

provide counsel, at county expense, to an indigent accused of a crime. *See, e.g., Carpenter v. County of Dane,* 9 Wis. 249 (\*274) (1859). In cases such as this one, where the statutes are silent with respect to the appointment of counsel, the appointment is properly viewed as having been made under SCR 81.02 (1988) as long as counsel provides services to one of the entities detailed in that rule. Of course, Attorney Hayes-Brook provided services to one of the entities detailed in SCR 81.02 (1988)—an indigent.

Having decided that this case is properly viewed as involving only SCR 81.02 (1988), we now address the County Board's argument that this rule's compensation rates are mandatory. The County Board relies on SCR 99.01(14) (1988) to support its construction of SCR 81.02 (1988) as mandatory. SCR 99.01(14) (1988), which states that the use of the word "shall" means that an action is mandatory unless a mandatory construction would undercut the manifest intent of the supreme court, provides as follows:

> **SCR 99.01 Construction of rules; guidelines.** In construing the rules of the Wisconsin supreme court, the following guidelines shall be observed unless the construction would produce a result inconsistent with the manifest intent of the supreme court:
>
> . . .
>
> (14) Mandatory or Permissive Actions. The use of "shall" means an action is mandatory. The use of "may" means an action is permissive.

Thus, according to the provisions governing the construction of our own rules, the hourly rates of SCR 81.02 (1988) are mandatory unless a mandatory construction would produce a result inconsistent with our manifest intent.

We find that a mandatory construction of the word "shall" as it is used in SCR 81.02 (1988) would not produce a result that is inconsistent with our manifest intent. Again, SCR 81.02 (1988) provides, in part, that "[a]ttorneys appointed by any court to provide legal services . . . for indigents . . . shall be compensated at the following rates . . .." Undoubtedly, in creating this rule, this court could have stated that courts were free to set reasonable compensation or that the hourly rates were to serve as mere guidelines. Instead, we set forth, with specificity, the compensation rates for court-appointed counsel and stated that such counsel shall be compensated at those rates. Under these circumstances, our use of the word "shall" in SCR 81.02 (1988) shows that we intended this rule's compensation rates to be mandatory.

Even though the hourly rates of compensation set forth in SCR 81.02 (1988) are mandatory, we find that it was proper for the circuit court to exceed these mandatory rates in setting Attorney Hayes-Brook's hourly rates of compensation. As the record makes clear, no attorney was willing to take Newman's complicated case at the rates set forth in SCR 81.02 (1988). Yet, the circuit court had an obligation to accommodate the constitutional requirement that an indigent defendant be afforded the assistance of counsel in a criminal prosecution. *Carpenter v. County of Dane,* 9 Wis. at 251; *Gideon v. Wainwright,* 372 U.S. 335, 344–45 (1963). In such extraordinary circumstances, it was necessary for the mandatory hourly rates of SCR 81.02 (1988) to yield to the constitutional requirement that Newman have representation.

The second issue raised by the County Board is whether the circuit court violated SCR 81.01 (1988) when it set the hourly rates of compensation Newman's

13

attorney would receive before the appointment of Attorney Hayes-Brook. The County Board cites the following language of SCR 81.01 (1988) in support of its argument that this rule was violated:

> [T]he court . . . after the services of the attorney have been performed . . . shall fix the amount of his or her compensation . . . in such sum as the supreme court has specified in SCR 81.02.

We have already stated that this case involves SCR 81.02 (1988), not SCR 81.01. In any event, we interpret SCR 81.01 and 81.02 as allowing a court to set the *hourly rates of compensation* prior to counsel's appointment; under SCR 81.01 (1988) and 81.02 (1988) a court is not permitted to set the *total amount of compensation* counsel is to receive before any services have been rendered. In this case, the circuit court did nothing to the contrary. Because Newman had been unable to obtain counsel at the rates mandated by SCR 81.02 (1988), the circuit court merely set the hourly rates of compensation Newman's attorney would receive in excess of those mandated rates before Attorney Hayes-Brook accepted the appointment. The circuit court did not set the total amount of compensation before Attorney Hayes-Brook performed any services.

We therefore hold that it was proper for the circuit court to compensate Attorney Hayes-Brook at hourly rates in excess of those rates mandated by SCR 81.02 (1988) to accommodate the constitutional requirement that an indigent defendant be afforded the assistance of counsel in a criminal prosecution. We also hold that it was proper for the circuit court to set the hourly rates of compensation Newman's attorney would receive before Attorney Hayes-Brook accepted the appointment. In

14

light of this holding, we affirm the circuit court's order to the County Board to pay Attorney Hayes-Brook the total amount of fees and expenses set by the court. We grant the County Board ninety days from the date of this decision to purge the contempt order.

*By the Court.*—The order of the circuit court is modified and, as modified, is affirmed.

CHIEF JUSTICE HEFFERNAN (concurring). I concur in the result reached by the majority, but I conclude that this court intended SCR 81.02 (1988) to be directory. I disagree with the other concurring opinion, however, that the majority's holding violates the separation of powers doctrine.

I disagree with the majority opinion that SCR 81.02 (1988) is mandatory. To hold that SCR 81.02 (1988) is mandatory conflicts with the manifest intent of this court, which is to leave considerable discretion with the trial judge who appoints the attorney. The Wisconsin Supreme Court has always recognized that the appointing judge is in the best position to determine what constitutes appropriate compensation in a given case.

This court stated on a previous occasion that trial judges may be justified in reducing the total compensation figure which would otherwise result from using the mandatory rates of compensation in SCR 81.02 (1988). *In Matter of Estate of Trotalli,* 123 Wis. 2d 340, 358–59, 366 N.W.2d 879 (1985). This court recognizes that situations may arise, as here, where a judge is justified in departing from the rates set forth in SCR 81.02 (1988). Therefore, SCR 81.02 (1988) must be read as directory.

I disagree with the assertion that the majority's holding violates the separation of powers doctrine because it replaces a statute with a substantially differ-

15

ent court rule. The problem with this conclusion is that it assumes that this court derives its authority to fix fees in cases where the court appoints an attorney from the legislature, and not from the constitution. In addition, this conclusion ignores the fact that the legislature has always recognized that setting attorney's fees is a judicial function.[1]

In Wisconsin, the authority to appoint counsel and set fees has traditionally been considered a judicial function. Long before the legislature enacted any statute providing indigents with counsel, this court declared that it had the inherent authority to appoint counsel in such cases and to hold the county liable for the services of the appointed attorney. *Carpenter v. County of Dane,* 9 Wis. 249 (*275) (1859). When the legislature passed a statute in 1860 which declared that counties were not in fact liable to pay for court-appointed attorneys, this court declared that statute void because it was inconsistent for the legislature to recognize the court's authority to order the appointment of attorneys and, at the same time, infringe on the obligation to pay for those services. *County of Dane v. Smith,* 13 Wis. 654 (*585) (1861).

In *State v. Cannon,* 199 Wis. 401, 402, 226 N.W. 385 (1929), this court commented on the broad powers conferred upon this court:

> [W]hen the people by means of the constitution established courts, they became endowed with all judicial powers essential to carry out the judicial

---

[1] I object to the characterization that sec. 757.49, Stats. 1979–80, the precursor to SCR 81.01, "authorized" courts to establish reasonable rates of compensation for court-appointed attorneys. In fact, sec. 757.49 and its predecessor, sec. 256.49, Stats., 1975 are legislative declarations that the issue of compensation is up to the discretion of the individual judge who appointed the attorney.

functions delegated to them. The courts established by the constitution have the powers which are incidental to or which inhere in judicial bodies, unless those powers are expressly limited by the constitution. But the constitution makes no attempt to catalogue the powers granted. It is the groundwork upon which the superstructure of government is raised by the exercise of those powers which are essential to carry out the functions imposed upon each department of government. These powers are known as incidental, implied, or inherent powers, all of which terms are used to describe those powers which must necessarily be used by the various departments of government in order that they may efficiently perform the functions imposed upon them by the people.

Later, in *State v. Kenney,* 24 Wis. 2d 172, 128 N.W.2d 450 (1964), this court affirmed that the court, not the legislature, has the ultimate responsibility in setting fees for services provided by a court-appointed attorney. The court stated that, while the state bar minimum-fee schedule was evidence of reasonable compensation, courts were not bound to apply those rates in setting fees. In that case, the court rejected the argument that sec. 256.49, Stats., required the court to apply the full minimum bar rates to services rendered by court-appointed counsel. The court, after all, is the ultimate arbiter of what constitutes reasonable compensation.

Other jurisdictions recognize that setting compensation for attorneys appointed by the court is a task which falls within the exclusive authority of the judicial branch. *Smith v. State,* 118 N.H. 764, 394 A.2d 834 (1978). The New Hampshire Supreme Court declared a statute which set maximum fees for the compensation of court-appointed attorneys unconstitutional.

> In the absence of an agreed-upon price, what constitutes reasonable compensation for performed services is, and has historically been, a matter for judicial determination. [citations omitted] Moreover, it is peculiarly within the judicial province to ascertain reasonable compensation when the person who performs the services is acting under court appointment as an officer of the court. We view it implicit in the constitutional scheme that the courts of this State have the exclusive authority to determine the reasonableness of compensation for court-appointed counsel. The statutes in question intrude upon this judicial function in violation of the constitutional separation of powers mandate. [Citations omitted.]

*Smith,* 118 N.H. at 769.

I conclude that the decision of the majority does not violate the separation of powers doctrine, because this court has the authority to fix attorney's fees in cases where the court appoints counsel. By adopting a supreme court rule which sets compensation for court-appointed attorneys, the court is continuing to carry out its traditional role as the branch of government which determines what is an appropriate amount of compensation for an attorney appointed by, and serving the needs of, the court.

SHIRLEY S. ABRAHAMSON, J. (concurring). A circuit court's power to determine fees for court-appointed counsel is of major concern to circuit courts, attorneys, county boards and the people of the state, who ultimately must pay the fees. Unfortunately, the majority opinion interpreting rules this court adopted adds confusion rather than clarity to this issue. I write in the hope that the Judicial Council (the proponent of Chapter 81, Supreme Court Rules, in 1979), the State Bar of Wisconsin (the proponent of the 1988 amendment to

18

SCR 81.02) and the Law Revision Committee, sec. 13.83 (1), Stats. 1987-88, will study this question and seek clarification of the circuit courts' power to fix attorney fees either by petitioning this court for amendment of Chapter 81 of the Supreme Court Rules or by seeking legislative change.

The majority opinion sets forth three holdings: (1) SCR 81.01 (1988) does not apply to this case. Majority opinion at 10. (2) SCR 81.02 (1988) applies to this case and establishes a mandatory schedule for attorney fees. Majority opinion at 13. (3) Despite the mandatory nature of SCR 81.02 (1988), the circuit court may fix higher attorney fees in this case "to accommodate the constitutional requirement that an indigent defendant be afforded counsel in a criminal prosecution." Majority opinion at 14.

I concur in the mandate. I conclude, however, that SCR 81.01 (1988) and 81.02 (1988) apply to this case and that these rules are directory.

The effect of the majority's holdings is problematic. By expressly separating SCR 81.01 (1988) and SCR 81.02 (1988), the majority opinion interprets Chapter 81 of the Supreme Court Rules as creating two rules for fixing the fees of court appointed counsel—one rule for cases governed by SCR 81.01 (1988) and another rule for cases governed by SCR 81.02 (1988).

Does the majority opinion mean to say that a court's power to determine fees for court-appointed counsel is different under SCR 81.01 (1988) and 81.02 (1988)? Does the majority opinion mean that SCR 81.01 (1988) is, as precedent indicates, directory? Or does the majority opinion mean that precedent is being over-turned and that fees fixed under SCR 81.01 (1988) must follow the mandatory fee schedule of SCR 81.02 (1988)?

19

Moreover, under the majority's interpretation of SCR 81.02 (1988), may the circuit court ever reduce the hourly fees in order to fix a total reasonable compensation? One would think not when the majority insists that SCR 81.02 (1988) is mandatory. Nevertheless the majority opinion hints that the court retains the power under SCR 81.02 (1988) to review the total compensation reached by multiplying the fee by the reasonable number of hours and reduce it where necessary. Unfortunately the majority's treatment of these basic issues is sure to raise questions when the bench and bar must adhere to these rules every day in the courtrooms of the state.

I address each of the majority's holdings separately.

## I.

The parties, the circuit court, and I conclude that both SCR 81.01 (1988) and 81.02 (1988) are applicable to this case. The majority opinion holds that SCR 81.01 (1988) is inapplicable and that SCR 81.01 (1988) applies only when a statute fixes a fee; no statute fixes a fee in this case.

The majority opinion's attempt to sever SCR 81.01 (1988) and 81.02 (1988) is not justified. The language of SCR 81.01 (1988) and 81.02 (1988) makes clear that these two provisions set forth one rule to guide courts in fixing fees for all court appointed counsel.

Supreme Court Rule 81.01 (1988) explicitly refers to and incorporates the rate schedule in SCR 81.02 (1988). SCR 81.01 (1988) states that the circuit court "*shall* fix the amount of [attorney's] compensation for the services and provide for repayment of disbursements *in such sum as the supreme court has specified in SCR 81.02* ." (Emphasis supplied.) Thus SCR 81.01 (1988) and 81.02

20

(1988) are intertwined; they cannot be separated. As this court said in *Romasko v. City of Milwaukee,* 108 Wis. 2d 32, 41, 321 N.W.2d 123 (1982), SCR 81.01 (1988) "makes applicable the compensation schedule in SCR 81.02." Contrary to the majority's assertion, this case supports reading SCR 81.01 (1988) and 81.02 (1988) together and applying both to all court appointed counsel. By not applying SCR 81.01 (1988) in this case, the majority opinion undercuts our opinion in *Romasko.*

Moreover, the drafting history of Chapter 81 confirms that SCR 81.01 (1988) and 81.02 (1988) are to be read together. Memorandum and drafting notes to both rules demonstrate that SCR 81.02 (1988), in conjunction with SCR 81.02 (1988), was to apply to all cases, regardless of whether a statute fixed a fee. See discussion pp. 27–28 *infra.*

## II.

The majority holds that in cases in which SCR 81.02 (1988) applies, the fee schedule is mandatory. Thus the appointing court may not fix attorney fees at higher or lower amounts than the 81.02 (1988) schedule provides. It rests this holding on the rule's use of the word "shall" in SCR 81.02 (1988) and its conclusory statement that interpreting SCR 81.02 (1988) as mandatory does not "produce a result inconsistent with the manifest intent of the supreme court." SCR 99.01 (14) (1988).[1]

---

[1]The general rule, oft-stated in the cases, is that the word "shall" is presumed mandatory when it appears in a legislative enactment. A second rule, also oft-stated in the cases, is that the word "shall" is construed as directory if necessary to carry out the clear intent of the legislature. *See, e.g., Karow v. Milwaukee County Civil Serv. Comm.,* 82 Wis. 2d 565, 570, 263 N.W.2d 214

I conclude that interpreting SCR 81.02 (1988) as mandatory produces a result inconsistent with the manifest intent of the supreme court.[2] The manifest intent of the court, as I shall demonstrate below, is that these rules are directory.

Moreover, the majority's holding that SCR 81.02 (1988) is mandatory necessarily means that SCR 81.01 (1988), which also uses the word "shall" and refers to and incorporates SCR 81.02's (1988) fee schedule, is also mandatory. The internal reference between the two rules means that any interpretation of one rule dictates the interpretation a reader must place on the second rule. Supreme Court Rules 81.01 (1988) and 81.02 (1988) are either both mandatory or both directory; one rule cannot be mandatory and the other directory.

It is precisely this result, the mandatory gloss on SCR 81.01 (1988) which necessarily follows from the

(1978); *Cross v. Soderbeck,* 94 Wis. 2d 331, 340, 288 N.W.2d 779 (1980); and *State v. Hervey,* 113 Wis. 2d 634, 642, 335 N.W.2d 607 (1983).

These two rules are applicable to the interpretation of the Supreme Court Rules. They are embodied in SCR 99.01 (14), which provides that the word "shall" as used in the Supreme Court Rules means "the action is mandatory" unless this construction "would produce a result inconsistent with the manifest intent of the supreme court."

[2]To determine whether the legislature intends the word "shall" to be construed as mandatory this court examines such factors as the history of the provision, the evil to be remedied and the general object sought to be accomplished, and the consequences resulting from alternative interpretations. *State v. Rosen,* 72 Wis. 2d 200, 207, 240 N.W.2d 168 (1976); *Karow v. Milwaukee County Civil Serv. Comm., supra,* 82 Wis. 2d at 572. These factors are helpful to determine whether a construction of SCR 81.01 and 81.02 as mandatory would produce a result inconsistent with the manifest intent of the supreme court.

majority holding that SCR 81.02 (1988) is mandatory, that is inconsistent with the manifest intent of the supreme court. Interpreting SCR 81.01 (1988) and 81.02 (1988) as mandatory contradicts the drafting history of these rules, raises serious issues of judicial usurpation of legislative power and of creating a confrontation of constitutional magnitude between the legislature and this court, and contradicts *In Matter of Estate of Trotalli,* 123 Wis. 2d 340, 358–59, 366 N.W.2d 879 (1985).

*Drafting history.* The legislature has fixed attorney fees of court-appointed counsel since at least 1862, 117 years before the adoption of Chapter 81 of the Supreme Court Rules.[3] Sec. 757.49, adopted as sec. 256.49 in 1957 to make all the statutory attorney fee provisions uniform, provided that the appointing court "shall . . . fix the amount of [the attorney's] compensation for the services . . . as the court shall deem proper, and which compensation shall be such as if customarily charged by attorneys in this state for comparable services."[4] Our

---

[3] 1862 Wis. Laws ch. 80, fixed the county's liability for fees to counsel to defend indigent criminals to the amount the appointing court certifies as "reasonable compensation therefore" "and which sum shall in no case exceed fifteen dollars per day for each day actually occupied in such trial or proceeding."

[4] SCR 81.01 is the culmination of legislative and judicial efforts to establish guidelines for compensation for court-appointed counsel. The genesis of SCR 81.01 is sec. 256.49, Stats. 1957, later renumbered sec. 757.49, Stats. 1979–80. Sec. 256.49 provided, inter alia, that compensation for court-appointed attorneys shall be set by the appointing court in the amount customarily charged by attorneys in this state for comparable services.

Sec. 256.49. **Compensation of attorneys appointed by court.** Notwithstanding any other provision of the statutes, in all cases where the statutes fix a fee and provide for the payment of expenses of an attorney to be appointed by the court to perform certain designated duties, the court appointing the attorney shall,

court declared that sec. 757.49 "authorized the appointing court to fix a fee which would be fair and reasonable for the services reasonably necessary under the circumstances." *Conway v. Sauk County,* 19 Wis. 2d 599, 603, 120 N.W.2d 671 (1963).

Section 757.49 allows the appointing court to fix reasonable fees; it is directory. Our court has, over the years, repeatedly interpreted and applied sec. 757.49 to determine the fees of court appointed attorneys and construed the statute as not "requiring the application of the full minimum rates of the State Bar of Wisconsin." *State v. Kenney,* 24 Wis. 2d 172, 180, 128 N.W.2d 450

---

after the services of the attorney have been performed and the disbursements incurred, fix the amount of his compensation for the services and provide for the repayment of disbursements in such sum as the court shall deem proper, and which compensation shall be such as if customarily charged by attorneys in this state for comparable services.

Section 256.49 was enacted in 1957 at the request of Philip Haberman, Executive Director of the State Bar of Wisconsin. Apparently the objective of the proponents of sec. 256.49 and the legislature in adopting sec. 256.49 was to replace the conglomeration of statutory provisions governing compensation to court-appointed counsel with one statute authorizing the appointing court to fix compensation that would be fair and reasonable under the circumstances.

Prior to the enactment of sec. 256.49, there were numerous statutes relating to compensation of court-appointed counsel. Some statutes authorized the trial court to order reasonable compensation for appointed counsel. *See, e.g.,* sec. 48.25(6), Stats. 1955. Other statutes authorized the trial court to order reasonable compensation but set maximum fees which were not to be exceeded. *See, e.g.,* sec. 12.25, Stats. 1955.

The maximum fees set by the legislature became outdated. Sec. 256.49 replaced these varied provisions with a standard for the determination of the value of legal services, namely, the customary charge by attorneys in Wisconsin for comparable services.

(1964).[5]

In 1979 the supreme court "repealed" sec. 757.49, Stats. 1979–80, replacing it with SCR 81.01 that the court characterized as an "equivalent provision."

The supreme court adopted the precursor of SCR 81.02 in 1978 as a rule for compensating counsel, without any discussion of the relation between it and sec. 757.49. This rule was revised and numbered SCR 81.02 in 1979.[6]

[5]In cases applying sec. 757.49 and determining the customary charge for comparable services, this court referred to the minimum fee schedule promulgated by the State Bar of Wisconsin as evidence of reasonable and customary charges for services. The court concluded, however, that because of the certainty of payment by the county and the lawyers' obligation to see that justice is done in our criminal courts, the rates in the fee schedule should be reduced by about one third to reach the reasonable and customary charges to be paid to court-appointed attorneys. *See, e.g., Conway v. Sauk County,* 19 Wis. 2d 599, 604–606, 120 N.W.2d 671 (1963); *State v. Kenney,* 24 Wis. 2d 172, 180, 128 N.W.2d 450 (1964); *State v. DeKeyser,* 29 Wis. 2d 132, 138–39, 138 N.W.2d 129 (1965); *State v. Sidney,* 66 Wis. 2d 602, 609–610, 225 N.W.2d 438 (1975).

[6]On May 19, 1978, in response to the petition of the Board of Attorneys Professional Responsibility (BAPR), the supreme court adopted a rule that would become the foundation of SCR 81.02. The petition sought to increase the compensation for counsel appointed by this court to represent BAPR in attorney discipline cases. Without explanation the supreme court adopted an apparently broader rule regulating hourly compensation for specified attorneys (not limited to attorneys for BAPR). The relation between this rule and sec. 757.49 was apparently not examined. See the file on this rule in the office of the Clerk of the Supreme Court, State Capitol, Madison, Wis. The rule stated:

[A]ttorneys appointed by the Supreme Court, to provide legal services for the Supreme Court, judges sued in their official capacity, indigents, and boards, commissions and committees appointed by

25

In adopting SCR 81.01, the supreme court revised sec. 757.49 by replacing the words "in such sum as the court shall deem proper, and which compensation shall be such as is customarily charged by attorneys in this state for comparable services" with the words "in such sum as the Supreme Court has specified in SCR 81.02." The drafting notes state that SCR 81.01 was derived from sec. 757.49 "and was redrafted to be reconciled with SCR 81.02." The goal was to have SCR 81.01 and 81.02 apply to all cases regardless of whether a statute fixed a fee. See Judicial Council Committee Note—1979, in West's Wisconsin Statutes Annotated, ch. 81, p. 332 (Special Pamphlet 1989), p. 811. *See also* Memo from Bruce Feustel, Senior Legislative Attorney, LRB-Rule 91/4, 2/9/79, in the drafting material on SCR ch. 81 at the Office of the Judicial Council, Madison, Wis.

---

the Supreme Court are entitled to be compensated at the following rates:

    (a)   Court time—$50 per hour

    (b)   Office time—$35 per hour

    (c)   Travel time—$25 per hour.

Both sec. 256.49 (the forerunner to SCR 81.01) and the 1978 Supreme Court Rule (the forerunner to SCR 81.02) were revised in 1979 on petition of the Judicial Council.

The Judicial Council recommended that the 1978 Supreme Court Rule regarding attorney fees be amended and numbered SCR 81.02. The council interpreted the 1978 Supreme Court Rule as governing only compensation paid to attorneys appointed by the supreme court and recommended that the rule be amended to apply also to compensation paid to attorneys appointed by the court of appeals and trial courts of record. The recommendation was adopted as SCR 81.02. See Judicial Council Committee Notes—1979, in West's Wisconsin Court Rules and Procedure, ch. 81 (1988), p. 811. The drafting history of SCR 81.02 demonstrates that SCR 81.01 and 81.02 are to be read together and as directory.

26

The supreme court characterized SCR 81.01 as "an equivalent provision" to sec. 757.49. *See* court order dated December 11, 1979, in West's Wisconsin Statutes Annotated (Special Pamphlet 1989), pp. 1–2. *See also* sec. 757.49, West's Wis. Stats. Annot., p. 379 (1981).

By characterizing SCR 81.01 as the equivalent to sec. 757.49, the court manifested its intent that SCR 81.01 is to be directory.

*Constitutional issue.* When the court adopted chapter 81 it recognized that it had to make supreme court rules "equivalent" to sec. 757.49, Stats. 1977, because the court has no power analogous to the legislature's to repeal a legislatively enacted statute.

I know of no authority in Wisconsin recognizing this court's power to repeal a statute or to repeal a statute by reformulating it as a Supreme Court Rule.

The court has recognized that it does not have the power to repeal a statute even when it holds the statute unconstitutional in a case in which the issue of constitutionality is briefed and argued. Even after this court's declaration of unconstitutionality, the statute remains on the statute book as a statute. If the court later changes its mind and holds that a statute previously declared unconstitutional is really constitutional after all, the statute is in full force and effect if the legislature has not repealed or amended it. See *State v. Field,* 118 Wis. 2d 269, 274, 347 N.W.2d 365 (1984) (the court declared a statute unconstitutional in 1974; it then declared the statute constitutional in 1984; the legislature had not amended or repealed the statute between 1974 and 1984; the court declared the statute to have been in full force and effect from 1974 through 1984).

The court does not have the power to repeal a statute by reformulating it as a rule. The court cannot rely

27

on sec. 751.12, Stats. 1987–88,[7] as authority to repeal sec. 757.49 and enact a contrary provision as a rule. First, sec. 751.12 providing for the supreme court's promulgating rules regulating pleading, practice and procedure expressly provides that statutes relating to pleading, practice and procedure "may be *modified or suspended*" by supreme court rules adopted under sec. 751.12. But sec. 751.12 does not permit the supreme court to *repeal* a statute by a rule.

Second, even if sec. 751.12 permitted the supreme court to adopt a rule that repeals a statute, SCR 81.01

---

[7]Sec. 751.12, Stats. 1987–88, reads as follows:

**751.12 Rules of pleading and practice.** The state supreme court shall, by rules promulgated by it from time to time, regulate pleading, practice and procedure in judicial proceedings in all courts, for the purpose of simplifying the same and of promoting the speedy determination of litigation upon its merits. The rules shall not abridge, enlarge or modify the substantive rights of any litigant. The effective dates for all rules adopted by the court shall be January 1 or July 1. A rule shall not become effective until 60 days after its adoption. All such rules shall be printed by the state printer and paid for out of the state treasury, and the court shall direct the rules to be distributed as it deems proper. All statutes relating to pleading, practice and procedure may be modified or suspended by rules promulgated under this section. No rule modifying or suspending such statutes may be adopted until the court has held a public hearing with reference to the rule. Notice of public hearings shall be given by publication of a class 3 notice, under ch. 985, the expense of the publication to be paid out of the state treasury. Notice shall also be given in an official publication of the state bar of Wisconsin, the notice to be published not more than 60 days nor less than 30 days before the date of hearing. The state bar of Wisconsin shall not charge the state treasury for publication of this notice. Proposed rules, including changes, if any, in existing rules, shall be set forth in full in the notice. This section shall not abridge the right of the legislature to enact, modify or repeal statutes or rules relating to pleading, practice or procedure. The judicial council shall act in an advisory capacity to assist the court in performing its duties under this section.

and 81.02 were not rules adopted by the court pursuant to sec. 751.12. The court expressly stated that SCR 81.01 and 81.02 were adopted as Supreme Court Rules. This court recognizes that important differences exist between rules adopted under sec. 751.12 and the Supreme Court Rules. *See* court order dated December 11, 1979, in West's Wisconsin Statutes Annotated (Special Pamphlet 1989), p. 1; SCR 98.01 (3); sec. 751.12, Stats. 1987–88.

The majority's interpretation creates a conflict between the statute and the Supreme Court Rules. The majority opinion has in effect repealed a legislatively enacted statute permitting courts to fix reasonable fees for court-appointed counsel and replaced it with a significantly different Supreme Court Rule that mandates a fee schedule. Had the majority opinion interpreted SCR 81.01 (1988) and SCR 81.02 (1988) as directory, as I urge, the effect would be that the court rules are the same as sec. 757.49 and the statutory enactment would not be affected. The majority opinion thus raises a significant constitutional question of judicial usurpation of legislative powers and creates a confrontation of constitutional magnitude between the legislature and this court. An interpretation of chapter 81 raising these constitutional questions is, in my opinion, contrary to the manifest intent of this court. I do not think the court intended SCR chapter 81 to create these constitutional issues.

*Trotalli.* Furthermore the interpretation of SCR 81.02 (1988) as mandatory, and by necessity SCR 81.01 (1988) as mandatory, produces a result inconsistent with the manifest intent of the supreme court demonstrated in *In Matter of Estate of Trotalli,* 123 Wis. 2d 340, 358–59, 366 N.W.2d 879 (1985). In *Trotalli,* we held that the circuit court may be justified in reducing the com-

pensation of an appointed guardian ad litem to a sum less than that produced by multiplying the reasonable number of hours spent on the case by the hourly fee set forth in SCR 81.02 (1988). When the court held that the total compensation for a court-appointed counsel may be reduced, it in effect permitted the circuit court to reduce the hourly rate. The *Trotalli* case teaches that SCR 81.01 (1988) and 81.02 (1988) give the circuit court discretion in fixing fees for court appointed counsel.

In addition, reading SCR 81.02 (1988) as mandating an hourly rate of compensation unduly interferes with the appointing court's inherent power and responsibility to appoint counsel to assure the integrity of the judicial process. The circuit court concluded that to provide efficient and fair justice in a timely manner to satisfy the necessities of this case, it should appoint counsel at rates higher than those set in SCR 81.02 (1988). Because the circumstances vary from case to case and the circuit court has the responsibility and power to secure representation, *Contempt in State v. Lehman,* 137 Wis. 2d 65, 403 N.W.2d 438 (1987), the supreme court obviously intended SCR 81.02 to be directory, leaving the decision regarding the hourly rate needed to secure counsel for the case to the discretion of the appointing court.

Finally, if SCR 81.02 (1988) is mandatory, as the majority opinion holds, it follows that the circuit court cannot reduce the total compensation after the circuit court determines at the beginning of the case what the hourly fee is and determines each month that the number of hours submitted by the attorney in his or her monthly bill is reasonable. The majority recognizes the difficulty with this chain of reasoning: prohibiting a court from fixing reasonable fees at the end of a case is inconsistent with the rule ordinarily stated in our attorney compensation cases that at the end of the case a

court has the power to determine the reasonableness of the total fee under the totality of the circumstances.

The majority opinion states that "under 81.01 and 81.02 a court is not permitted to set the total amount of compensation counsel is to receive before any services have been rendered." Majority opinion at 14. Why should the majority opinion speak about SCR 81.01 when the majority opinion has concluded that SCR 81.01 (1988) does not apply to this case? Is the majority suggesting that the circuit court has the same power under SCR 81.02 (1988) that it possesses under SCR 81.01 (1988), namely the power at the end of the case to evaluate the reasonableness of the total compensation to be paid court-appointed counsel? If so, then SCR 81.02 is not mandatory, as the majority holds. The majority does not explain this internal inconsistency in the opinion.

For the reasons set forth I conclude that interpreting SCR 81.02 (1988) as mandatory produces a result inconsistent with the manifest intent of the supreme court.

III.

Even if I were to agree with the majority opinion's interpretation of SCR 81.01 (1988) and 81.02 (1988), and I do not, the record does not justify the majority's holding that the circuit court could fix fees in excess of the mandatory SCR 81.02 (1988) fee schedule in this case in order to ensure the defendant's constitutional right to counsel. The court would have to remand the case to the circuit court to take evidence and make appropriate findings.

The majority opinion reasons that the circuit court properly acted to "accommodate the constitutional

31

requirement that an indigent defendant be afforded counsel in a criminal prosecution." Majority opinion at 14. The record offers no evidence or court determination that the defendant was indigent or unable to find counsel at the rates set forth in SCR 81.02 (1988).

To the contrary, the defendant was found not indigent by the state public defender's office. When the circuit court attempted to investigate the defendant's alleged indigency, the defendant failed to disclose any financial information and refused to authorize the public defender's office to release his financial statements. Indigency is a question of fact and the burden of proof of indigency is on the defendant. *State v. Buelow,* 122 Wis. 2d 465, 364 N.W.2d 255 (Ct. App. 1984). The defendant did not meet his burden in this case.

The county expressly challenges the claim that the defendant was unable to obtain counsel at the rates set forth in SCR 81.02 (1988). Nothing on the record justifies the circuit court's decision to set a rate in excess of the fee schedule in SCR 81.02 in order to entice counsel to take the case. The only evidence in the record that supports the contention that the defendant could not obtain counsel is his unsupported statement. The circuit court made no attempt to verify the defendant's assertion or help him procure counsel.

The majority opinion states that the circuit court made the appointment of counsel pursuant to its "constitutional obligation to provide counsel, at county expense, to an indigent accused of a crime." Majority opinion at 14. According to its order, however, the circuit court did not appoint counsel to satisfy the constitutional rights of the defendant. The circuit court expressly relied on its inherent power to appoint counsel for the proper administration of justice, specifically citing *Contempt in State v. Lehman,* 137 Wis. 2d 65, 403

N.W.2d 438 (1987), in its order appointing counsel. In *Lehman,* the circuit court appointed stand-by counsel for an indigent defendant who waived counsel and wanted to represent himself. This court concluded that the circuit court's power to appoint counsel in the *Lehman* case was not tied to any constitutional right of the defendant but "was based, as it should be, on a determination that the needs of the Trial Court, and not the defendant would be best served by doing so." 137 Wis. 2d at 77.

The record supports the county's stipulation in the case at bar that "the decision to appoint counsel in this case was based upon a determination that the needs of the trial court, not the defendant, would be best served by doing so." Stipulation, majority op. at 8, note 7.

Given this record and the absence of a finding or evidence of indigency or of a finding or evidence of inability to find counsel at the rates set forth in SCR 81.02, I conclude that there is no support for the majority's assertion that the circuit court appointed counsel at higher rates in order to accommodate the defendant's constitutional right to counsel.

Each month the circuit court in this case determined that the number of hours submitted by Attorney Hayes-Brook in her monthly bill was reasonable, and the County Board has not disputed this determination. The board argues only that the circuit court had no authority to fix hourly rates of compensation higher than those set in SCR 81.02 (1988). The County Board has raised a legitimate and reasonable concern on behalf of its citizens.

I conclude that the only interpretation of SCR 81.01 (1988) and 81.02 (1988) that comports with the language of the rules, the drafting history, the case law and this court's constitutional powers is that the circuit court is

authorized to set reasonable attorney fees in each case and that the fee schedule in SCR 81.02 (1988) is a guideline for reasonable fees.

For the reasons set forth herein, I concur in the mandate of the court but I do not join in the opinion.